James E. Magleby (7247)
  magleby@mcgiplaw.com
Jennifer Fraser Parrish (11207)
  parrish@mcciplaw.com
MAGLEBY CATAXINOS & GREENWOOD, PC
170 S. Main Street, Suite 1100
Salt Lake City, UT 84101
Telephone: (801) 359-9000
Facsimile: (801) 359-9011

Attorneys for Plaintiff, ClearOne, Inc.

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **CLEARONE, INC., a Utah corporation,**<br><br>   **Plaintiff,**<br><br>**v.**<br><br>**PATHPARTNER TECHNOLOGY, INC., a California corporation, and PATHPARTNER TECHNOLOGY PVT. LTD., an Indian private limited company,**<br><br>   **Defendants.** | **OPPOSITION TO MOTION TO DISMISS [32]**<br><br><br><br><br><br>**Case No.:  2:18-cv-427-JN-PMW**<br><br>**Honorable Jill N. Parrish**<br>**Magistrate Judge Paul M. Warner** |

Plaintiff ClearOne, Inc. ("ClearOne"), by and through its counsel of record, submits this Opposition to Motion to Dismiss [32] filed by PathPartner Technology, Inc. ("and PathPartner Technology Pvt. Ltd.[1] (collectively, "Defendants").

---

[1] ClearOne notes that PathPartner Technology Pvt. Ltd. was formerly known as PathPartner Technology Consultants Pvt. Ltd.  Accordingly, any reference in this brief to either name is a reference to the same entity (hereinafter, "PathPartner India").

## INTRODUCTION

Defendants have each moved to dismiss ClearOne's complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  However, their conduct has created sufficient contacts with the forum to confer specific personal jurisdiction in this action, and this Court's exercise of such jurisdiction would not offend traditional notions of fair play and substantial justice.

Defendant PathPartner Technology, Inc. has also moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  However, the allegations in the complaint, viewed in the light most favorable to ClearOne (and as further supported by the declarations), evidence that Defendants are one and the same, such that both entities should defend against ClearOne's claims in this action.

Accordingly, ClearOne respectfully requests that the Court deny the Motion to Dismiss [32].

## RELEVANT FACTS

### Utah Was and Is the Center of ClearOne's Operations

1.      ClearOne was a Utah corporation at all relevant times, with its corporate headquarters at 5225 Wiley Post Way, Suite 500, Salt Lake City, Utah.  [Decl. of D. Graham ("Graham Decl."), ¶ 6, attached as Exhibit A].

2.      On the ClearOne company website, www.clearone.com, ClearOne's Salt Lake City address is the only address given for contacting the company.  [Decl. of J.F. Parrish ("Parrish Decl.") at Ex. 1, attached hereto as Exhibit B].

3.      Most of ClearOne's decision makers work out of Salt Lake City, including the CEO and other top employees, and the ClearOne Board of Directors all live in and regularly meet in Utah.  [Graham Decl., ¶ 7].

**PathPartner Solicited ClearOne's Employees in Utah as a**
**Single, Indistinguishable Entity Referred to as "PathPartner"**

4.      ClearOne was first approached by a company purporting to go by the name of "PathPartner" when Vijay Verma ("Vijay") e-mailed Derek Graham ("Derek"), ClearOne's Sr. Vice President of Research & Development, at his office in Salt Lake City on July 8, 2014.  [*Id.*, ¶¶ 2, 8-10].

5.      Based on his e-mail signature, Vijay was a Senior Business Analyst for PathPartner Technology Inc., operating out of Fremont, California (hereinafter, "PathPartner California").  [*Id.*, ¶ 11].

6.      Vijay's current LinkedIn page shows that he is a "Senior Business Analyst at Path Partner Technology Inc at PathPartner Technology Consulting Pvt. Ltd.," and has been since January 2010.  [Parrish Decl. at Ex. 2].  Vijay's LinkedIn page does not separate out the PathPartner entities, but states that "PathPartner is a design house focusing on embedded multimedia technologies and media centric devices."  [*Id.*].

7.      When Derek did not respond, Vijay e-mailed him again on July 10, 2014. [Graham Decl., ¶ 12].  When Derek did not respond to that e-mail, Vijay e-mailed him yet again on July 15, 2014.  [*Id.*].

8.      When Derek did not respond to any of Vijay's three e-mails in July 2014, Vijay e-mailed Derek again on August 18, 2018.  [*Id.*, ¶ 13].  This time Vijay also sent an

e-mail to Zee Hakimoglu ("Zee"), ClearOne's CEO, who also worked out of Salt Lake City.  [*Id.*].

9.      When Derek finally agreed to speak with PathPartner, he was then contacted by Raman Narayan ("Raman"), who also goes by Raman Narayanan, when Raman called Derek at ClearOne's Salt Lake City office on August 25, 2014.  [*Id.*, ¶ 14].

10.      Raman was the Country Manager for "PATHPARTNERTECH TECHNOLOGY INC," operating out of Fremont, California, as shown in his e-mail signature.  [*Id.*, ¶ 15].

11.      Raman's current LinkedIn page shows that he is a "Sr.Vice President at PathPartner Technology," operating out of the San Francisco Bay Area, and has been since 2012.  [Parrish Decl. at Ex. 3].  Like Vijay's, Raman's LinkedIn page does not distinguish a separate PathPartner entity in India from the entity in California.  [*Id.*].

12.      Following his August 25, 2014, call to Derek in Salt Lake City, Raman e-mailed a slide presentation to Derek in Utah, that included a slide "About Us," referring ClearOne to the www.pathpartnertech.com website to "learn more about us":



[Graham Decl. at Ex. 2, pp. 9].

13.     The website www.pathpartnertech.com presents a single,

indistinguishable entity referred to as "PathPartner," describing the company as

"headquartered in Bangalore, India with an offshore research facility in California, USA,"

and boasting a "Geographical presence in India, USA, and Japan":



[Parrish Decl. at Ex. 4, pp. 15].

14.     The website also shows Raman as part of PathPartner's "Leadership Team," and does not distinguish between employees working in India or California:



[*Id.*, pp. 15-16].

15.     On September 3, 2014, Raman e-mailed Bala Krishnamoorthy ("Bala"), ClearOne's Senior Director of Product Line Management, UC Voice & Media Collaboration, working out of ClearOne's Salt Lake City office, providing a "Company Overview" slide presentation, describing – consistent with the company's website – a singular entity referred to as "PathPartner," including the following "Fact File":



[Graham Decl., ¶¶ 17, 19 & Ex. 3, pp. 3].

16.    Vijay, Raman, and all other individuals subsequently communicating with ClearOne on behalf of Defendants – from the beginning of the parties' relationship in the summer of 2014 to the end in the winter of 2018 – continually referred to "PathPartner" as a singular, indistinguishable entity, with offices in India and California.  [*Id.*, ¶ 21].

**PathPartner California Negotiated the Agreement Between
ClearOne and PathPartner India**

17.    On September 4, 2014, after ClearOne required that "PathPartner" enter into a non-disclosure agreement before continuing discussions about a potential development project, Raman e-mailed Bala in Salt Lake City, attaching an agreement executed by PathPartner Technology Consulting Pvt. Ltd., with address in Bangalore, India.  [*Id.*, ¶ 22].

18.    The executed "Mutual Non-Disclosure Agreement" ("NDA") provided that

Raman and "PATHPARTNER TECHNOLOGY INC" in Fremont, California, were to be

noticed on behalf of PathPartner India:

| ClearOne Inc. | Other Party: | PathPartner Technology Consulting Pvt.Ltd. |
| Attn: Narsi Narayanan | Attn: | Raman Narayan |
| Senior Vice President of Finance | Title: | Country Manager |
| 5225 Wiley Post Way, Suite 500 | Address: | PATHPARTNERTECH TECHNOLOGY INC |
| Salt Lake City, Utah 84116 | | 48834, Kato Road, Suite 115A, Fremont, CA 94538 |
| Fax: 801-303-3349 | Fax: | 408-242-7411 (mobile) |
| Email: narsi@clearone.com | Email: | raman.narayan@pathpartnertech.com |

[*Id.* at Ex. 5, pp. 6].

19.    The NDA also provided that the agreement would be governed by the

laws of the State of Utah and that jurisdiction of any dispute under the agreement "lie

exclusively with state or federal courts sitting within the State of Utah."  [*Id.*].

20.    The NDA was signed by Narsi Narayanan ("Narsi") on behalf of ClearOne.

[*Id.*].  Narsi was Senior Vice President of Finance for ClearOne, and worked out of

ClearOne's Salt Lake City office.  [*Id.*, ¶ 36].

21.    The NDA was signed by Ramkishor Korada ("Ramki") on behalf of

PathPartner India.  [Graham Decl. at Ex. 5, pp. 6].  Ramki was one of the individuals

shown on PathPartner's website as being a company leader with Raman.  [Parrish Decl.

at Ex. 4, pp. 15-16].

22.    Ramki's current LinkedIn page shows that he is a "Co-founder and

executive director at PathPartner Technologies" in the San Francisco Bay Area, and

has been since 2006.  [*Id.* at Ex. 5].  Like Vijay's and Raman's, Ramki's Linked in page

does not separate out the PathPartner entities.  [*Id.*].

23.     On September 10, 2014, Raman e-mailed Bala in Utah a formal

"Technical Proposal for Wireless Sharing Solution," purporting to come from

PathPartner India:

Submitted by:

**PATHPARTNER**

**PathPartner Technology Consulting Pvt. Ltd**

[Graham Decl., ¶ 23 & Ex. 6, pp. 2].

24.     Raman continued to negotiate the contract between ClearOne and

PathPartner India over a period of two months, through multiple calls and e-mails to

Derek and Bala, two ClearOne employees in Utah.  [*Id.*, ¶ 24].

25.     Ramki also became involved in the negotiations, sending numerous e-

mails to Bala in Salt Lake City and eventually executing the November 18, 2014,

"Software Development and License Agreement" (the "2014 Contract") on behalf of

PathPartner India.  [*Id.*, ¶ 25; *see also* Decl. of D.M. Kupfer ("Kupfer Decl.") at Ex. A,

Dkt. 32-1].

26.     The 2014 Contract provided that it was to be governed by the laws of

Delaware, but contained no provision regarding the choice of forum.  [Kupfer Decl. at

Ex. A, pp. 8].

27.     From PathPartner's first solicitation of ClearOne until the execution of the

2014 Contract, PathPartner (through Vijay, Raman, and Ramki) <u>sent</u> at least 30 e-mails

to ClearOne employees known to be working in Salt Lake City, and engaged in at least

a dozen telephone or Skype calls with ClearOne employees in Utah.  [Graham Decl., ¶ 27].

### PathPartner Communicated Extensively with ClearOne Employees in Utah For More Than Three Years, Including to Re-Negotiate the 2014 Contract

28.     Work on the project commenced immediately after the 2014 Contract was executed.  [*Id.*, ¶ 28].

29.     On the ClearOne side, the project was managed by Bala in Utah, along with the project's initial technical point of contact, Peter Manley ("Peter"), ClearOne's Chief Architect, Integrated Platform Technologies, who also worked out of Salt Lake City.  [*Id.*, ¶ 29].

30.     After the first months of the project, Bala became the technical point of contact for the project for over two years, until Ketan Merchant ("Ketan"), working out of ClearOne's Austin, Texas, office, stepped into Bala's role in the fall of 2017.  [*Id.*, ¶ 30].

31.     Other ClearOne team members initially on the project were Abel Hernandez and Marcelo Martinez, working out of ClearOne's office in Spain, and Amit Malca and Levana Salem, working out of ClearOne's office in Israel.  [*Id.*, ¶ 31].  During the project's second year, Adi Ovadia from ClearOne's Israel office was also involved.  [*Id.*].

32.     On the PathPartner side, the point of contact and project manager was Narayana Vadlamani ("Narayana"), the project architect was Chaitanya Vasantharao (also known as "LC"), the Director of Engineering supervising Narayana and LC was Keshav Karunakar ("Keshav"), and the Chief Technology Officer and Executive Vice

President for Engineering over the entire operation was Dipanjan Ghosh ("Dipanjan") – all working out of India.  [Graham Decl., ¶ 32].  During the project's second year, Karthikeyan Balasubramanian, also in India, joined the project.  [*Id.*].

33.   During the first year of the project (November 18, 2014, through November 17, 2015), PathPartner India employees <u>sent</u> ClearOne employees in Utah at last 60 e-mails, including a weekly status report to Bala and/or Peter in Salt Lake City. [*Id.*, ¶ 33].

34.   In the summer of 2015, PathPartner India employees had at least 6 meetings with Bala in Utah over Skype.   [*Id.*, ¶ 34].

35.   On November 26, 2015, at the beginning of the project's second year, Raman reached out to Bala in Salt Lake City, in an attempt to re-negotiate the parties' contract.  [*Id.*, ¶ 35].

36.   In response to this request, ClearOne re-negotiated the terms of the 2014 Contract with PathPartner from January to April 2016.  [*Id.*, ¶ 36].  These negotiations occurred over e-mail and telephone, with PathPartner communicating directly with Bala and Narsi, both in Salt Lake City.  [*Id.*].

37.   On the PathPartner side, Raman and Ramki in California, and Keshav in India, were part of the negotiations.  [Graham Decl., ¶ 38].  In addition, a PathPartner employee in California named Vinay Mangalore ("Vinay") was involved.  [*Id.*].

38.    On April 5, 2016, the re-negotiated "Software Development and License Agreement" (the "2016 Contract") was executed, giving PathPartner additional time to

complete the project, and doubling the amount of money to be paid by ClearOne for the project.  [*Id.*, ¶ 39; *see also* Kupfer Decl. at Ex. B, Dkt. 32-2].

39.     During the second year of the project (November 18, 2015, through November 17, 2016), PathPartner India employees <u>sent</u> ClearOne employees in Utah at last 80 e-mails.  [Graham Decl., ¶ 41].

40.     PathPartner India employees also had at least 10 Skype meetings with Bala in Utah during the second year.  [*Id.*, ¶ 42].

41.     During the third year of the project (November 18, 2016, through November 17, 2017), PathPartner employees in India <u>sent</u> ClearOne employees in Utah at last 70 e-mails.  [*Id.*, ¶ 43].

42.     After the completion of the project's third year, on February 16, 2018, PathPartner threatened to stop work on the project in an e-mail from Raman to Bala in Utah.  [*Id.*, ¶ 44].  On March 30, 2018, PathPartner walked out on the parties' contract when Raman e-mailed Ketan, "At this point, the decision is to close the project in an orderly manner and there will be no more development engineers to work on this project from immediate effect."   [*Id.*, ¶ 45].

43.     In both the 2014 Contract and the 2016 Contract, PathPartner was obligated to provide certain software and other "deliverables" to ClearOne in Utah on a certain schedule, in exchange for payment from ClearOne.  [*Id.*, ¶ 46; *see also* Exs. B & D to 2014 Contract and 2016 Contract, Kupfer Decl. at Exs. A & B, respectively].

44.     While PathPartner achieved some of the required milestones, they did not achieve all of the ones promised in the contracts.  [Graham Decl., ¶ 47].

45.     Accordingly, ClearOne commenced this suit on May 31, 2018, including by alleging that PathPartner's failure to timely perform on the 2014 Contract and 2016 Contract has injured ClearOne in Utah, including because it "has put [ClearOne] at a significant disadvantage compared to other competitors in the marketplace with [the] functionality" PathPartner promised to provide.  [Compl., ¶ 36, Dkt. 3].

### PathPartner India Accepted $120,000 From Utah

46.     PathPartner sent invoices to ClearOne in Utah numerous times, including seven times by e-mailing them to Bala in Salt Lake City.  [Graham Decl., ¶ 48].

47.     These invoices were approved for payment by ClearOne employees in Utah, and the invoiced amounts (which totaled $120,000) were wired to PathPartner's bank account in India from ClearOne's account with U.S. Bank at 170 South Main Street, Salt Lake City, Utah.  [*Id.*, ¶ 49].

### ARGUMENT

## I.     THE COURT SHOULD DENY PATHPARTNER INDIA'S MOTION TO DISMISS

### A.     PathPartner India Waived Its Right to Contest Personal Jurisdiction

"Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived." *Insurance Corp. of Ireland, Ltd., v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 703 (1982).  While PathPartner India timely raised a lack of personal jurisdiction as its 13th affirmative defense in its answer, [Answer at 15, Dkt. 22], it did not request a ruling on the issue until four months after it filed its counterclaims and participated in the litigation.  *See, e.g.*, *Hunger U.S. Special Hydraulics Corp. v. Hardie-Tynes Mfg. Co.*, No. 99-4042,

13

2000 WL 147392, at *3 (10th Cir. Feb. 4, 2000) (denial of motion to dismiss where defense timely asserted in answer but defendant "actively participated in the litigation and sought affirmative relief from the court").  Accordingly, this Court should determine that PathPartner India's actions "amount[ed] to a legal submission to the jurisdiction of the court."  *Compagnie des Bauxites de Guinee,* 456 U.S. at 704-05.

Specifically, this case was filed six months ago on May 31, 2018.  [Compl., Dkt. 3].  Defendants filed an answer two months later, on July 25, 2018.  [Answer, Dkt. 22].  At that same time, PathPartner India filed a counterclaim, asserting four claims against ClearOne for breach of contract, quantum meruit, unjust enrichment, and breach of the covenant of good faith and fair dealing, and demanding a jury on all issues.  [*Id.*].  In addition to seeking affirmative relief from this Court in the form of its counterclaim, PathPartner India also participated in the litigation to date, including by seeking the *pro hac vice* admission of five out-of-state attorneys, working with ClearOne and the Court to enter a schedule, and serving its initial disclosures.  [*See* Dkt. 14, 16-21, 24, 26-29; *see also* Sept. 7, 2018, Defs.' Initial Disclosures, attached hereto as Exhibit C].

In sum, PathPartner India has submitted itself to this jurisdiction of this Court, and the Court should deny its motion to dismiss.

### B.   The Court May Exercise Specific Personal Jurisdiction Over PathPartner India

#### i.   General Principles

Where, as in Utah, "the state long arm statute supports personal jurisdiction to the full extent constitutionally permitted, due process principles govern the inquiry."  *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011); *see also* Utah Code Ann. §

78B-3-201(3) (2018) (long-arm statute "should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause"). "[T]o exercise jurisdiction in harmony with due process, defendants must have 'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'" *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Such contacts may give rise to personal jurisdiction over a non-resident defendant either generally, for any lawsuit, or specifically, solely for lawsuits arising out of particular forum-related activities." *Shrader*, 633 F.3d at 1239. In this case, ClearOne asserts specific jurisdiction over Defendants, which "is premised on something of a *quid pro quo*: in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts." *Dudnikov*, 514 F.3d at 1078.[2]

ClearOne bears the initial burden of establishing personal jurisdiction. *Kindig It Design, Inc. v. Creative Controls, Inc.*, 157 F. Supp. 3d 1167, 1172 (D. Utah 2016) (citing *Shrader*, 633 F.3d at 1239). "But where, as here, a motion to dismiss is made with no request for an evidentiary hearing, '[ClearOne] need only make a prima facie showing of personal jurisdiction to defeat the motion.'" *Kindig It Design*, 157 F. Supp. 3d at 1172 (quoting *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159

---

[2] ClearOne does not contend that the Court may exercise general personal jurisdiction over either of the Defendants. Accordingly, the Court may disregard the arguments set forth in Defendants' brief at section II.B.i.

(10th Cir.2010)).  ClearOne "may carry this burden 'by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant[s]."  *Id.*  Any factual disputes must be resolved in ClearOne's favor.  *Kindig It Design*, 157 F. Supp. 3d at 1172-73 (citing *Shrader*, 633 F.3d at 1239).

Here, resolving all factual disputes in ClearOne's favor, ClearOne has carried its burden of making a prima facie showing of specific personal jurisdiction against PathPartner India and the Court should deny PathPartner India's motion to dismiss.

      ii.      <u>ClearOne Has Met Its Burden of Establishing That PathPartner India's Activities Satisfy the Requirements of Specific Personal Jurisdiction</u>

Under Tenth Circuit law, to satisfy the requirements of specific personal jurisdiction, the plaintiff must show "that (1) the defendant has purposefully availed itself of the privilege of conducting activities or consummating a transaction in the forum state; and (2) the litigation results from alleged injuries that arise out of or relate to those activities." *Kindig It Design*, 157 F. Supp. 3d at 1178 (quoting *Emp'rs Mut. Cas.*, 618 F.3d at 1160).  The purposeful availment requirement "ensures that a defendant will not be subject to the laws of a jurisdiction 'solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person.'" *Kindig It Design*, 157 F. Supp. 3d at 1178 (quoting *AST Sports Sci. Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056–57 (10th Cir. 2008)).

Here, the parties' contractual relationship – which forms the basis for ClearOne's claims – would not have existed if PathPartner India had not first reached out to the forum to solicit ClearOne's business in Utah.  In particular, PathPartner California, as

authorized agent for PathPartner India,[3] sent multiple e-mails into the forum to

ClearOne executives at the company's headquarters in Salt Lake City, in order to

_____

[3] As discussed, *infra*, with respect to PathPartner California's motion for judgment on
the pleadings, ClearOne believes that the alleged facts viewed in a light most favorable
to ClearOne, together with the declarations, are sufficient to show that PathPartner
California and PathPartner India are one in the same, such that PathPartner California
may be liable under ClearOne's contract with PathPartner India, or that additional
discovery into the relationship is warranted under the circumstances.  However – and
irrespective of the success or failure of PathPartner California's 12(c) motion – the
evidence shows that at the very least, PathPartner California was acting as PathPartner
India's authorized agent in negotiating the contracts with ClearOne.

Specifically, at the beginning of the parties' relationship, only employees from
PathPartner California were in contact with ClearOne.  [Facts, *supra*, ¶¶ 4-11, 15-18].
These individuals held themselves out as representing a singular, indistinguishable
"PathPartner" entity, with offices in India and California.  [*Id.*, ¶¶ 4-16].  Further,
PathPartner India executed a non-disclosure agreement so that ClearOne could
continue its conversations with a PathPartner California employee about a potential
development project.  [*Id.*, ¶¶ 17-23].  The NDA specified PathPartner California as the
party to be noticed on behalf of PathPartner India.  [*Id.*, ¶ 18].  Additionally, in the
project's second year, when the parties' development contract was re-negotiated,
PathPartner California employees again stepped in.  [*Id.*, ¶¶ 35-38].  Finally, when
PathPartner India refused to continue performance on the project, it was a PathPartner
California employee that delivered the news to ClearOne.  [*Id.*, ¶ 42].  Accordingly, the
statement under oath from Keshav Karunakar in support of Defendants' motion to
dismiss, that "PathPartner [Technology], Inc. was not involved with these agreements in
any way," is demonstrably false (not to mention, troubling).  [Decl. of K. Karunakar
("Karunakar Decl."), ¶14, Dkt. 32-4].

A nonresident corporate entity creates contacts for personal jurisdiction purposes
through its authorized representatives: its employees, directors, officers,
and agents. *International Shoe,* 326 U.S. at 316 (a corporation's presence, for personal
jurisdiction purposes, is "manifested only by activities carried on in its behalf by those
who are authorized to act for it").  Moreover, a nonresident defendant cannot insulate
itself from *specific* personal jurisdiction, merely by acting through contractors and other
agents, in lieu of its employees.  *See, e.g., Asahi Metal Indus. Co. v. Superior
Court*, 480 U.S. 102, 112 (1987) ("marketing the product through a distributor who has

*(continued on the next page)*

introduce "PathPartner" and the services it could offer ClearOne.  [Facts, *supra*, ¶¶ 4-12, 15, 17-23].  Subsequently, PathPartner India, through its employees and/or authorized agents, negotiated a contract with ClearOne in Utah over the course of a period of two months.  [*Id.*, ¶¶ 23-27].  From PathPartner India's first solicitation of ClearOne until the execution of this contract, PathPartner India's employees and/or agents <u>sent</u> at least 30 e-mails into the forum to ClearOne employees in Salt Lake City, in order to close the deal on the project that is the subject of this lawsuit.  [*Id.*, ¶ 27].

Ultimately, PathPartner India executed three contracts with ClearOne, a Utah corporation.  [*Id.*, ¶¶ 1-3, 17-21, 24-26, 35-38].  First, PathPartner India executed a non-disclosure agreement with ClearOne that was governed by Utah law and agreed to the jurisdiction of the Utah courts.  [*Id.*, ¶¶ 17-21].  PathPartner India then entered into a development contract with ClearOne that required PathPartner India provide certain software and other "deliverables" to ClearOne in Utah on a certain schedule, in exchange for payment.  [*Id.*, ¶¶ 24-26, 43].  Accordingly, while the work on the project may have occurred primarily in India, the most significant part of PathPartner India's performance, i.e., delivery of project releases to ClearOne, occurred in Utah.  [Facts,

---

agreed to serve as the sales agent in the forum State" may constitute the "[a]dditional conduct" needed to establish minimum contacts).

In sum, the acts of PathPartner California are attributable to PathPartner India as its agent for purposes of determining specific personal jurisdiction, even there is no alter ego relationship of privity of contract.  And even if the activities of PathPartner California are not imputed to PathPartner India, the remaining contacts of PathPartner India, including the more than three years of frequent and regular e-mails and meetings with ClearOne employees in Utah, as well as performance of the contracts by providing deliverables to Utah in exchange for payment, would be sufficient to confer the specific personal jurisdiction of this Court.  [Facts, *supra*, ¶¶ 32-34, 39-41, 43-44, 46].

*supra*, ¶¶ 32 & 43].  Finally, PathPartner India entered into a third contract with

ClearOne that amended and modified the parties' previous development contract.  [*Id.*,

¶¶ 35-38].  That contract also required performance in Utah through project

deliverables.  [*Id.*, ¶ 43.]  These deliverables were not provided, or not timely provided,

by PathPartner India to ClearOne in Utah, which is the reason ClearOne commenced

the instant action.  [*Id.*, ¶¶ 44-45; *see also* Compl., Dkt. 3].

Moreover, PathPartner India did not just create contacts with Utah through the

negotiation and execution of the three contracts.  PathPartner India continued to direct

its activities to the forum state for a period of over three years, <u>sending</u> over 210 e-mails

to ClearOne employees working in Salt Lake City.  [Facts, *supra*, ¶¶ 33, 41, 39].

PathPartner India also participated in at least 28 meetings with ClearOne employees in

Utah, by telephone and over Skype.  [*Id.*, ¶¶ 27, 34, 40].  PathPartner India also partially

performed on the project by providing certain deliverables to ClearOne in Utah.  [*Id.*, ¶

44].  Finally, PathPartner India invoiced ClearOne for project milestones by sending the

bill to ClearOne in Utah, and accepted payments totaling $120,000 from a bank in Utah.

[*Id.*, ¶¶ 46-47].

PathPartner India's numerous contacts with Utah were not random, fortuitous, or

attenuated, but purposefully directed to the forum.  Further, ClearOne's claims for

breach of contract, breach of the covenant of good faith and fair dealing, and unjust

enrichment – not to mention PathPartner India's own counterclaims – arise directly out

of these Utah contacts, under both a but-for and proximate cause test.  *See Newsome*

*v. Gallacher*, 722 F.3d 1257, 1271 (10th Cir. 2013) ("The import of the 'arising out of'

analysis is whether the plaintiff can establish that the claimed injury resulted from the defendant's forum-related activities."). Not only are the facts discussed, *supra*, "events in the causal chain leading to [ClearOne's] injury," but the claimed injury was a foreseeable result of PathPartner's forum-related activities. *Id.* at 1269 (quoting *Dudnikov*, 514 F.3d at 1078). In particular, the same facts used to establish personal jurisdiction are relevant to the merits of ClearOne's claims, including without limitation whether PathPartner India's refusal (manifested through communication directed to the forum) to provide all required deliverables (performance required in the forum) was justified or a breach of the parties' agreements (through examination of the parties' communications over the course of more than three years, including those sent into the forum by PathPartner India).

In conclusion, it is both foreseeable and reasonable that PathPartner India would be haled into a Utah court for breaching its agreements with ClearOne, where PathPartner India sought, and obtained, a benefit from its purposive conduct directed at the forum, including the consummation of numerous exchanges and transactions with ClearOne employees in Utah, resulting in "continuing obligations between [itself] and residents of the forum." *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 475-76 (1985); *see also Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir.1988) ("[T]he solicitation of business in the forum state that results in business being transacted or contract negotiations will probably be considered purposeful availment."). Accordingly, this Court may exercise specific personal jurisdiction over PathPartner India and its motion to dismiss should be denied.

iii.     Defendants' Arguments Are Unavailing

Defendants' arguments against this Court's exercise of personal jurisdiction fail.

First, it is well established that a defendant's physical presence in the forum is not necessary to find specific personal jurisdiction.  *See Tombstone Exploration Corp v. EuroGas, Inc.*, No, 2:15-cv-00195, 2015 WL 5883327, at *2 (D. Utah Oct. 8, 2015) ("[D]efendants do not need to be physically present in the forum, so long as the foundational activities of the underlying action arise out of or relate to the contacts."); *see also Burger King*, 471 U.S. at 476 ("Although territorial presence frequently will enhance a potential defendant's affiliation with a State and will reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted.").

Second, while a single contract "is <u>typically</u> regarded as insufficient to justify the exercise of jurisdiction over an out-of-state defendant," there is much more than that here.  *Hemisphere Management, LLC v. ComputerEase Software, Inc.*, No. 2:06-cv-337, 2006 WL 3457212, at *5 (D. Utah Nov. 16, 2006) (emphasis added).  As acknowledged by the Court in *Hemisphere Management*, "contracting with a Utah company may constitute a contact with Utah for jurisdictional purposes," *id.*, and in this case PathPartner India entered at least three such contracts related to the claims. [Facts, *supra*, ¶¶ 1-3, 17-21, 24-26, 35-38].  Moreover, unlike in the *Hemisphere Management* case, the record establishes that these contracts were negotiated and

21

executed in Utah – facts which the Court in *Hemisphere Management* noted as

important.  *See* 2006 WL 3457212, at *5 ("The few facts that are available indicate that

the contract at issue was not negotiated or executed in Utah.").  Further, the contractual

relationship in this case is not like the relationships in *Hemisphere Management* and

*Bathcrest, Inc. v. Safeway Safety Step, Inc.*, 417 F. Supp. 2d 1236 (D. Utah 2006),

where the parties signed one distribution agreement and were subsequently left to their

own devices.  Here the parties were instead engaged in three years of constant

interaction and mutual obligation, as they worked together to complete a technical

project, making litigation in this forum both reasonable and foreseeable.

      Finally, the fact that the development contracts specify the application of

Delaware law does not mean that PathPartner India has not, through its continuous

contacts with the forum, "purposefully avail[ed] itself of the privilege of conducting

activities with the forum State, thus invoking the benefits and protections of its laws,"

including because choice of law and personal jurisdiction are different analyses.  *Burger*

*King*, 471 U.S., at 475; *see also Sneeze Wheeze & Itch Assocs., LLC v. Dynavax*

*Techs. Corp.*, No. 09-cv-1190, 2010 WL 1050249, at *5 n. 8 (C.D. Ill. Mar. 16, 2010) ("A

choice-of-law clause does not defeat the exercise of personal jurisdiction by this Court,

where [defendant] has purposefully availed itself of the privileges of doing business in

[the forum].").  Further, in this case, PathPartner India invoked the benefits and

protections of Utah law when it agreed to the parties' NDA, which is governed by Utah

law and agrees to the jurisdiction of the Utah courts.  [Facts, *supra*, ¶¶ 17-21].

PathPartner India has also now invoked the benefits and protections of the forum

through its assertion of its counterclaims, wherein it claims to seek $990,000 in

damages from ClearOne based on the alleged existence of express or implied-in-fact

agreements with ClearOne outside of the two development agreements governed by

Delaware law.  [*See* Counterclaim, Dkt. 22; *see also* Defs.' Initial Disclosures at 8

("damages to date [are] $990,000 USD, which includes . . . amounts owed on account

of work and services . . . that were beyond the scope of the [parties'] agreements")].

 In sum, ClearOne has met its burden, and nothing that Defendants have

presented would prevent this Court from exercising specific personal jurisdiction.

  iv. <u>The Court's Exercise of Specific Personal Jurisdiction Over
PathPartner India Would Not Offend Traditional Notions of Fair Play
and Substantial Justice</u>

 Even if ClearOne has met its burden, the Court must still decide whether the

exercise of personal jurisdiction over PathPartner India would offend traditional notions

of fair play and substantial justice.  *Dudnikov*, 514 F.3d at 1080 (quoting *Int'l Shoe*, 326

U.S. at 316).  In deciding this, courts traditionally consider:

> (1) the burden on the defendant, (2) the forum state's interests in resolving
> the dispute, (3) the plaintiff's interest in receiving convenient and effectual
> relief, (4) the interstate judicial system's interest in obtaining the most
> efficient resolution of controversies, and (5) the shared interest of the
> several states [or foreign nations] in furthering fundamental social policies.

*Id*.  That said, "where a defendant seeks to defeat jurisdiction, it must present a

compelling case that the presence of some other considerations would render

jurisdiction unreasonable."  *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270,

1280 (10th Cir. 2005).  The exercise of personal jurisdiction in this case would

not be unreasonable, and because PathPartner India has not made a compelling case otherwise, its motion should be denied.

As to the first factor, the burden on PathPartner India, while litigating in Utah would present additional burdens, the burden is not any more so than if it were required to litigate in Delaware, or any other U.S. state.  In any case, given PathPartner's numerous contacts with the forum, including its solicitation of work from, and negotiation and execution of multiple contracts with, a Utah company, it would not be unfair or unreasonable to require PathPartner India to defend against claims in this Court.

The second factor, the forum state's interest in the lawsuit, weighs in favor of exercising jurisdiction.  While the development contracts may specify Delaware law, Utah has an interest in protecting the integrity of business transactions that are consummated, and partially performed, within its borders, and with its citizens – especially when the Court is competent to apply Delaware law.  Moreover, PathPartner India has asserted counterclaims based on other alleged agreements with ClearOne, express or implied-in-fact.  These claims will likely be governed by Utah law after a choice of law analysis, considering that the parties' only connection to Delaware is the singular contract provision.  In any case, "[Utah] law may apply to this case and the existence of a potential choice of law issue does not show that the forum state lacks an interest in resolving a contract dispute involving one of its residents."  *Labadie v. Protec Fuel Mgmt., LLC*, No.10-cv-0587, 2011 WL 43008, at *10 (N.D. Okla. Jan. 4, 2011).

The third factor, ClearOne's interest in receiving convenient and effective relief, also weighs in favor of exercising jurisdiction.  The most convenient place in the U.S. for

the issue to be resolved is here in Utah, where the plaintiff, and the majority of the U.S.

witnesses, are located.  For these reasons, the fourth factor, efficient use of the

interstate judicial system, also weighs in favor of keeping the case in Utah.

Finally, the fifth factor, the shared interest of the several states or foreign nations

in furthering fundamental social policies does not favor either party.

In conclusion, the exercise of personal jurisdiction over PathPartner India would

not offend traditional notions of fair play and substantial justice, and its motion to

dismiss should be denied.

## II.    THE COURT SHOULD DENY PATHPARTNER CALIFORNIA'S MOTION TO DISMISS

### A.    The Court May Exercise Specific Personal Jurisdiction Over PathPartner California

While PathPartner California's contacts are fewer in quantity than PathPartner

India's, they are still of sufficient quality for this Court to exercise specific personal

jurisdiction.

Specifically, PathPartner California sent multiple e-mails into the forum to

ClearOne executives at the company's headquarters in Salt Lake City, in order to solicit

business for "PathPartner."  [Facts, *supra*, ¶¶ 4-12, 15, 17-23].  Subsequently,

PathPartner California negotiated a contract with ClearOne in Utah over the course of a

period of two months.  [*Id.*, ¶¶ 23-27].  From the first solicitation of ClearOne until the

execution of this contract, PathPartner California <u>sent</u> at least 30 e-mails into the forum

to ClearOne employees in Salt Lake City, in order to close the deal on the project that is

the subject of this lawsuit.  [*Id.*, ¶ 27].  Additionally, in the project's second year, when

the parties' development contract was re-negotiated, PathPartner California employees again stepped in. [*Id.*, ¶¶ 35-38]. Finally, when PathPartner India refused to continue performance on the project, it was a PathPartner California employee that delivered the news to ClearOne. [*Id.*, ¶ 42].

In sum, PathPartner California's numerous contacts with Utah were not random, fortuitous, or attenuated, but purposefully directed to the forum. Further, ClearOne's claims arise directly out of these Utah contacts, under both a but-for and proximate cause test. In particular, ClearOne's claims would not exist, but-for PathPartner California's solicitation of its business, and it is both foreseeable and reasonable that PathPartner California would be haled into a Utah court, where PathPartner California sought a benefit from its purposive conduct directed at the forum. Moreover, for the same reasons discussed, *supra*, in the context of PathPartner India, this Court's exercise of specific personal jurisdiction over PathPartner California would not offend traditional notions of fair play and substantial justice. The Court should therefore deny PathPartner California's motion to dismiss.

### B. PathPartner California Is Not Entitled to Judgment on the Pleadings

ClearOne does not dispute that the PathPartner entity that signed the NDA, 2014 Contract, and 2016 Contract was PathPartner India, or that most of the engineers working on the project on the PathPartner side were located in India. However, throughout ClearOne's entire business relationship with PathPartner – which spanned more than three years – every individual communicating with ClearOne on behalf of Defendants continually referred to "PathPartner" as a singular, indistinguishable entity,

with offices in India and California.  [Facts, *supra*, ¶ 16].  The multiple slide

presentations and documents given to ClearOne about the "Company" refer to one

entity with multiple locations.  [*Id.*, ¶¶ 12, 15].  This is consistent with the PathPartner

website, as well as the LinkedIn pages of PathPartner employees, which do not

distinguish between the Indian entity and the California entity, but instead refer to a

single "PathPartner" entity "[e]stablished in 2006 . . . [and] headquartered in Bangalore,

India with an offshore research facility in California, USA."  [*Id.*, ¶¶ 6, 11, 13-14, 22].

Defendants held themselves out to ClearOne and the public as being one and

the same.  And not only did they present themselves this way, but they also acted as if

they were one in the same.  As previously discussed in this memorandum, PathPartner

California employees negotiated every contract ClearOne entered with PathPartner

India.  Because of this conduct by Defendants, the acts set forth in the complaint were

alleged, in good faith, to have been conducted by Defendants collectively.  Accepting

these allegations as true, and viewing them in the light most favorable to ClearOne, the

complaint sets forth sufficient facts to state a claim to relief against PathPartner

California that is plausible on its face.

Accordingly, judgment on the pleadings should be denied.[4]

---

[4] If the Court does not find that the allegations in the complaint are sufficient, then
ClearOne requests that the motion be converted to one for summary judgment, so that
the Court may consider the evidence in the attached declarations.  And if the Court is
still inclined to grant the relief requested by PathPartner California, then ClearOne
requests that it be given the opportunity to conduct further discovery into the parties'
relationship under Federal Rule of Civil Procedure 56(d).

## CONCLUSION

For the reasons set forth herein, ClearOne respectfully requests that the Motion to Dismiss [32] be denied.

DATED this 3rd day of December, 2018.

MAGLEBY CATAXINOS & GREENWOOD, PC

/s/ Jennifer Fraser Parrish

_____
James E. Magleby
Jennifer Fraser Parrish

Attorneys for Plaintiff, ClearOne, Inc.

## DUCivR 7-1(a)(3)(A) CERTIFICATION

Because this document exceeds the page limit of twenty-five (25) pages, I certify that it complies with the word-count limit because, according to the word count function on my word processor, this document contains 6,434 words, exclusive of this certification and the parts set forth in DUCivR 7-1(a)(3)(A).

DATED this 3rd day of December, 2018.

MAGLEBY CATAXINOS & GREENWOOD, PC

/s/ Jennifer Fraser Parrish

_____
James E. Magleby
Jennifer Fraser Parrish

Attorneys for Plaintiff, ClearOne, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that I am employed by the law firm of MAGLEBY CATAXINOS & GREENWOOD, 170 South Main Street, Suite 1100, Salt Lake City, Utah 84101, and that pursuant to Rule 5(b), Federal Rules of Civil Procedure, a true and correct copy of the foregoing **OPPOSITION TO MOTION TO DISMISS [32]** was delivered to the following this 3rd day of December, 2018, via submission to the CM/ECF System:

Andrew D. Wright
 awright@strongandhanni.com
Andrew B. McDaniel
 amcdaniel@strongandhanni.com
STRONG & HANNI
9350 South 150 East, Suite 820
Sandy, Utah 84070

David M. Kupfer (*pro hac vice*)
 David.Kupfer@kennedyscmk.com
Mark F. Hamilton (*pro hac vice*)
 Mark.Hamilton@kennedyscmk.com
Dana L. Steinberg (*pro hac vice*)
 Dana.Steinberg@kennedyscmk.com
Erik B. Derr (*pro hac vice*)
 Erik.Derr@kennedyscmk.com
Kennedys CMK LLP
120 Mountain View Blvd.
Basking Ridge, NJ 07920

Attorneys for Defendants

/s/ Hi Evan Gibson

_____