IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CLEARONE, INC.,<br><br>                    Plaintiff,<br><br>v.<br><br>PATHPARTNER TECHNOLOGY, INC. and PATHPARTNER TECHNOLOGY PVT. LTD.,<br><br>                    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PATHPARTNER'S MOTION FOR SUMMARY JUDGMENT, GRANTING PATHPARTNER'S MOTION TO EXCLUDE THE EXPERT TESTIMONY OF STEPHEN GRAY, GRANTING WITHOUT PREJUDICE PATHPARTNER'S MOTION TO EXCLUDE THE TESTIMONY OF DEREK GRAHAM AND KETAN MERCHANT, GRANTING IN PART AND DENYING IN PART CLEARONE'S MOTION TO DETERMINE DAUBERT ISSUES, AND GRANTING IN PART AND DENYING IN PART CLEARONE'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:18-cv-00427-JNP-JCB<br><br>District Judge Jill N. Parrish |

ClearOne, Inc. ("ClearOne") sued PathPartner Technology Pvt. Ltd. ("PathPartner") for breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment. ECF No. 3. In response, PathPartner brought counterclaims against ClearOne for breach of contract, quantum meruit, unjust enrichment, and breach of the duty of good faith and fair dealing. ECF No. 22.

Before the court are three motions: (1) ClearOne's Motion to Determine *Daubert* Issues (ECF No. 130), (2) ClearOne's Motion for Summary Judgment on PathPartner's Counterclaims (ECF No. 133), and (3) PathPartner's Motion to Bar Expert Testimony and Motion for Summary Judgment on ClearOne's Claims (ECF No. 138). PathPartner's motion can more accurately be

described as three motions—one to bar the testimony of ClearOne's expert witness, Stephen Gray ("PathPartner's Motion to Exclude the Expert Testimony of Stephen Gray"); one for summary judgment on ClearOne's claims ("PathPartner's Motion for Summary Judgment on ClearOne's Claims"); and one to bar the testimony of ClearOne's non-retained expert witnesses Derek Graham and Ketan Merchant ("PathPartner's Motion to Exclude the Testimony of Derek Graham and Ketan Merchant"). Thus, the court addresses PathPartner's filing as three separate motions.

For the reasons presented herein, the court GRANTS IN PART and DENIES IN PART PathPartner's Motion for Summary Judgment on ClearOne's Claims (ECF No. 138), GRANTS PathPartner's Motion to Exclude the Expert Testimony of Stephen Gray (ECF No. 138), GRANTS WITHOUT PREJUDICE PathPartner's Motion to Exclude the Testimony of Derek Graham and Ketan Merchant (ECF No. 138), GRANTS IN PART and DENIES IN PART ClearOne's Motion to Determine *Daubert* Issues (ECF No. 130), and GRANTS IN PART and DENIES IN PART ClearOne's Motion for Summary Judgment on PathPartner's Counterclaims (ECF No. 133).

## BACKGROUND[1]

On November 18, 2014, ClearOne, a Utah corporation, and PathPartner, an Indian private limited company, entered into a contract "whereby PathPartner was to develop software that ClearOne could incorporate into its products for the purpose of enabling wireless presentation and video-conferencing." ECF No. 138 at 3. Although the parties originally agreed that ClearOne would pay $120,000 for the software solution, the parties renegotiated in 2016 and the price was increased $240,000 (the original and renegotiated contracts are collectively referred to as the "Agreement"). Even at this increased price, Raman Narayanan, PathPartner's Senior Vice

---

[1] To the extent that a fact is relevant to one of the motions for summary judgment, it is recited in the light most favorable to the non-moving party.

President and Country Manager for North America, believed that the project would still be a loss for PathPartner.

Over the following two years, PathPartner completed various phases of the software project pursuant to the Agreement. In addition, following requests from ClearOne, PathPartner completed work that was not prescribed in the Agreement, such as by rendering the software compatible with Windows 10 and "incorporat[ing] internalization into the software." *See* ECF No. 157-9 ¶¶ 4–9. PathPartner was not compensated by ClearOne for the work that it performed beyond the scope of the Agreement.

On March 30, 2018, before PathPartner completed the software project, the project was terminated by PathPartner. The circumstances under which the project was terminated—as well as who is at fault for the termination—is the subject of the instant lawsuit. ClearOne filed suit against PathPartner on May 31, 2018, alleging that PathPartner's failure to complete the project amounted to breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment. PathPartner subsequently brought four counterclaims, alleging that ClearOne's failure to compensate it for the work that it performed that was beyond the scope of the Agreement resulted in breach of contract, quantum meruit, unjust enrichment, and breach of the covenant of good faith and fair dealing.

During discovery, ClearOne served an interrogatory on PathPartner that asked PathPartner to "[i]dentify any and all facts supporting [its] allegation in the Counterclaim that 'ClearOne requested that PathPartner Technology perform services that were different than or in addition to those called for' in the 2014 and/or 2016 Contract." ECF No. 133-3 at 19–20. PathPartner responded, in pertinent part, that:

> ClearOne repeatedly changed its software requirements, added constraints to the software requirements, demanded functionality and added performance

specifications exceeding those identified in the Parties' agreements, requested out of scope work from PathPartner Ltd. for which it did not pay, and unreasonably delayed in testing and product acceptance. ClearOne's demands required PathPartner Ltd. to commit man hours to the performance of research and other labor beyond the scope of the agreements. ClearOne has yet to compensate PathPartner Ltd. for these resources. ClearOne's behavior throughout the life of the Parties' Agreement caused substantial delay and made it impossible for PathPartner Ltd. to perform the Parties' agreements. Path Partner [sic] Ltd. refers to documents produced by this party in discovery, which documents tend to prove the foregoing facts.

*Id.* at 20. Over the course of discovery, PathPartner never supplemented this response, nor did it provide any greater specificity regarding which documents produced in discovery supported its response.

Both parties also disclosed expert damages witnesses. ClearOne's expert, Stephen Gray, calculated ClearOne's alleged damages by attempting to determine how much it would cost ClearOne to develop the software in-house in Austin, Texas. Gray's method involved multiplying "the work effort put forth by the PathPartner development team for the ClearOne project"—which he determined from a document that PathPartner produced during discovery—by the cost of such work if it were performed in Austin, Texas. *See* ECF No. 138 at Ex. F ¶¶ 13, 15. In his report, Gray stated that "[t]he facts and data on which [he] based the opinions reflected in [the] report are of a type reasonably relied upon by experts in [his] profession" and that he "utilized conventional methodologies in [his] analysis." *Id.* ¶ 2. However, Gray did not cite any source to support these assertions. Moreover, Gray explained that it was his opinion that his damages estimate "substantially understates the actual cost for ClearOne to develop the project, as there are several aspects of cost that are not included in the analysis." *Id.* ¶ 18. In addition to Gray's report, ClearOne also produced evidence of quotes that it received from third-parties to develop the software.

PathPartner's damages expert, Jeffrey Balyeat, produced a report in which he calculated PathPartner's alleged damages that resulted from ClearOne's failure to compensate PathPartner

for the out-of-scope work that PathPartner performed. Balyeat also produced a supplemental report in which he critiqued Gray's analysis. In his initial report, Balyeat included a table—which was largely, if not entirely, prepared by someone else—in which all of the out-of-scope work that PathPartner allegedly performed was documented, along with how long it took PathPartner to complete that work. During Balyeat's deposition, he acknowledged that he initially had difficulty understanding the descriptions of the out-of-scope work provided in the table because of his lack of technical expertise. He also admitted that he never verified that the times documented in the table were accurate. Balyeat's report also included estimates regarding the amount of time that PathPartner was delayed by ClearOne's requests for out-of-scope work, as well as the amount of time that it would take a reasonable software development company to complete various tasks that PathPartner performed for ClearOne. Balyeat included no explanation for how he calculated these figures, and he could not explain the calculations at his deposition.

In addition to the damages experts, ClearOne also disclosed Derek Graham and Ketan Merchant, ClearOne employees, as nonretained expert witnesses. In pertinent part, ClearOne's disclosure stated that:

> Derek Graham and Ketan Merchant, persons previously disclosed pursuant to Rule 26(a)(2)(C) to offer expert opinions in response to the April 2, 2021, Expert Witness Report of Jeffrey L. Balyeat (the "Balyeat Report"), will more specifically address section three of the Balyeat Report and opine that the work in each row of the table set forth on pages 10 through 20 of the Balyeat Report is not in fact work beyond the scope of the parties' agreement, based upon the language in the parties' agreement and how the description of the work set forth in the table relates to the project requirements, and as generally informed by these experts' knowledge of the project, software development generally, and the technology described, among other things.

ECF No. 138-2 at 30–31.

Based on the foregoing, ClearOne moved for summary judgment on PathPartner's counterclaims and to exclude the expert report and testimony of Balyeat. Similarly, PathPartner

moved for summary judgment on ClearOne's claims and to exclude Gray's expert report and testimony, as well as Graham's and Merchant's testimony.

## LEGAL STANDARDS

### I.   Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (citation omitted).

"At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). Rather, the court must "construe the evidence in the light most favorable to . . . the nonmoving party." *Est. of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (citation omitted). However, "an inference is unreasonable if it requires a degree of speculation and conjecture that renders [the fact-finder's] findings a guess or mere possibility," *Pioneer Ctrs. Holding Co. ESOP & Tr. v. Alerus Fin., N.A.*, 858 F.3d 1324, 1334 (10th Cir. 2017), and summary judgment on a claim is required if the party that bears the burden of proof at trial "fails to make a showing sufficient to establish the existence of an element essential to that party's case," *Celotex*, 477 U.S. at 322.

## II.     Expert Testimony

The court has a "gatekeeping obligation" to determine the admissibility of expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Under Federal Rule of Evidence 702, "[a] two-part test applies to determine admissibility." *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013). First, the court must "determine whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc) (quoting FED. R. EVID. 702). "Second, the court 'must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony.'" *Conroy*, 707 F.3d at 1168 (citation omitted). "[T]he court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology, as set forth in *Daubert*." *Nacchio*, 555 F.3d at 1241. "[T]he testimony must be 'based upon sufficient facts or data' as well as 'the product of reliable principles and methods' and the expert must have 'applied the principles and methods reliably to the facts of the case.'" *Id.* (quoting FED. R. EVID. 702). "The proponent of expert testimony bears the burden of showing that the testimony is admissible." *Conroy*, 707 F.3d at 1168.

## ANALYSIS

## I.     PathPartner's Motion for Summary Judgment (ECF No. 138)

PathPartner moves for summary judgment on ClearOne's claims for breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment. The court addresses the parties' arguments with respect to each claim in turn.

### A.     *Breach of Contract (Claim I)*

PathPartner moves for summary judgment on ClearOne's breach of contract claim. PathPartner argues that ClearOne's breach of contract claim fails as a matter of law because

ClearOne cannot prove damages, which "are an essential element of any breach of contract claim." ECF No. 138 at 5. Specifically, PathPartner asserts that expectation damages—which "are the appropriate remedy for a breach of contract claim"—"must have been reasonably foreseeable at the time the parties entered into the contract." *Id.* at 6. PathPartner further asserts that "ClearOne's efforts to establish its damages claim[] rel[y] entirely on the report of its expert, Stephen Gray," who concluded that ClearOne's minimum damages were $5,210,490.64. *Id.* PathPartner argues, in essence, that because its contract with ClearOne was for only $240,000, "damages exceeding $5 million" was not reasonably foreseeable at the time the parties entered into the contract. *Id.* PathPartner further argues that "Mr. Gray's report—and thus, ClearOne's alleged damages—are not tethered to the facts of the case" because the parties "contemplated that the project would be completed by Indian software developer contractors employed by PathPartner, not in-house, by on-site developers employed by ClearOne," as Gray assumed when he calculated ClearOne's alleged damages. *See id.* at 9. Thus, according to PathPartner, ClearOne has no cognizable evidence of damages.

In response, ClearOne argues that PathPartner breached its promise to deliver a complete software solution to ClearOne for $240,000 and, therefore, "ClearOne's damage is the cost to obtain the complete software solution it expected to receive from PathPartner . . . *plus* what ClearOne paid into the project with PathPartner . . . *and* the lost sale of $137,765 . . . *minus* the amount it avoided having to pay PathPartner." ECF No. 149 at 11. ClearOne further argues that "it was reasonably foreseeable to PathPartner at the time it entered the Agreement[] that if it did not provide ClearOne the complete software solution bargained for, for $240,000, then ClearOne would have to obtain the software through another avenue at greater expense" and that "if

ClearOne did not have the complete solution on time, it would miss out on certain sales opportunities, like the lost $137,765 sale in 2018." *Id.* at 12.

Moreover, ClearOne disputes that it relies entirely on Gray's report to establish the amount of its alleged damages. Rather, ClearOne contends that, in addition to alternative damages figures that were produced by PathPartner's own expert, ClearOne has also produced evidence of quotes that it received from four software development companies to complete the project. ClearOne argues that, as a result, it has produced sufficient evidence—tethered to the facts of the case—of the amount of damages that it suffered from PathPartner's alleged breach of contract to defeat summary judgment. The court agrees.

Under Delaware law,[2] "[i]n order to prevail on their claim for breach of contract, plaintiffs must show by a preponderance of the evidence: first, that an express or implied contract existed; second, that defendant breached that contract; and third, that the breach of contract led to damages suffered by plaintiffs. In order to satisfy the final element, plaintiffs must show both the existence of damages provable to a reasonable certainty, and that these damages flowed from defendant's violation of the contract." *LaPoint v. AmerisourceBergen Corp.*, No. 327-CC, 2007 Del. Ch. LEXIS 131, at *28 (Sept. 4, 2007) (internal citations omitted).

Under Delaware law, the standard remedy for breach of contract is expectation damages, which "is based upon the reasonable expectations of the parties *ex ante*." *Duncan v. TheraTx, Inc.*, 775 A.2d 1019, 1022 (Del. 2001). "This principle of expectation damages is measured by the amount of money that would put the promisee in the same position as if the promisor had

---

[2] The court previously determined that, because of a choice of law provision in the parties' Agreement, Delaware law applies to "[t]he validity, interpretation, construction and performance of [the] Agreement." ECF No. 58 at 5–6. Thus, Delaware law applies to ClearOne's breach of contract claim, as well as PathPartner's breach of contract counterclaim, which is addressed below.

performed the contract. Expectation damages thus require the breaching promisor to compensate the promisee for the promisee's reasonable expectation of the value of the breached contract, and, hence, what the promisee lost." *Id.* (internal citation omitted); *see also Leaf Invenergy Co. v. Invenergy Renewables LLC*, 210 A.3d 688, 695 (Del. 2019) ("When determining expectation damages, courts determine an amount that will give the injured party 'the benefit of its bargain by putting that party in the position it would have been [in] but for the breach.'" (citation omitted)). "In an ordinary civil action 'the precise amount of damages need not be shown with mathematical precision so long as the court can arrive at an intelligent estimate without speculation or conjecture.' Once the fact of legal injury or damage is established, 'the difficulty in determining the amount of damages will not preclude recovery.'" *GE Harris Ry. Elecs., L.L.C. v. Westinghouse Air Brake Co.*, No. 99-070-GMS, 2004 U.S. Dist. LEXIS 16329, at *35–36 (D. Del. Aug. 18, 2004) (citations omitted); *see also SIGA Techs., Inc. v. Pharmathene, Inc.*, 132 A.3d 1108, 1111 (Del. 2015) ("[W]hen a contract is breached, expectation damages can be established as long as the plaintiff can prove the *fact* of damages with reasonable certainty. The *amount* of damages can be an estimate.").

Here, ClearOne has produced sufficient evidence to permit a reasonable jury to arrive at a reasonable, "intelligent estimate" of ClearOne's damages resulting from PathPartner's alleged breach of contract. *See GE Harris*, 2004 U.S. Dist. LEXIS 16329, at *35–36. First, it is undisputed that PathPartner agreed to deliver a software package to ClearOne for $240,000 and that "ClearOne did not receive the complete package of software." ECF No. 138 at 1. Therefore, if the jury determines that PathPartner breached its contract with ClearOne by failing to deliver the complete package of software, ClearOne will be entitled to "the amount of money that would put [ClearOne]

in the same position as if [PathPartner] had performed the contract" (i.e., delivered the complete package of software to ClearOne). *See Duncan*, 775 A.2d at 1022.

Clearly, one core component of this value is the cost to ClearOne of obtaining the complete package of software from some alternative source. Contrary to PathPartner's contention that ClearOne "relies entirely on the report of its expert, Stephen Gray," to establish that cost,[3] ECF No. 138 at 6, ClearOne has produced evidence of quotes that it received from four different software development companies to complete the project. Although these quotes may not establish "with mathematical precision" the cost to ClearOne to complete the project, they are sufficient evidence of the cost of completing the project to enable the jury to render a reasonable estimate of the amount of damages that ClearOne allegedly suffered. *See Duncan*, 775 A.2d at 1022.

Moreover, to the extent that PathPartner contends that the quotes are inappropriate evidence of ClearOne's alleged damages because the four software development companies quoted software that is different from what PathPartner originally agreed to deliver, whether the quoted software is "a reasonable substitute under the circumstances is a question of fact" for the jury to decide at trial. *See Hughes Commc'ns Galaxy, Inc. v. United States*, 271 F.3d 1060, 1066 (Fed. Cir. 2001) (citing *Bigelow-Sanford, Inc. v. Gunny Corp.*, 649 F.2d 1060, 1065 (5th Cir. 1981)).

Furthermore, to the extent that it matters that the quotes from the four software development companies were substantially greater than the price at which PathPartner agreed to develop the software for ClearOne, the court notes that PathPartner has conceded that "ClearOne

---

[3] As described below, the court concludes that Gray's expert report and testimony are inadmissible under Federal Rule of Evidence 702. Accordingly, the court agrees with PathPartner that ClearOne cannot use Gray's report as evidence of ClearOne's alleged damages. However, contrary to PathPartner's assertions, ClearOne has produced sufficient alternative evidence of the amount of damages that it allegedly suffered from PathPartner's alleged breach of contract to defeat summary judgment on this claim.

received a significant discount on the Project." ECF No. 138 at 2. In addition, ClearOne has produced evidence suggesting that PathPartner recognized from the outset that it offered to produce the software at a low price, *see, e.g.*, ECF No. 149-1 (deposition testimony of Raman Narayanan, PathPartner's Senior Vice President and Country Manager for North America) at 174:7–9 ("Q. So your gut feeling was that the project would overshoot the $120,000? A. Yes."); *id.* at 175:22–24 ("For the amount of engineering effort of what we are putting, 120K was much too low. That's it, period."), including after the contract was renegotiated such that ClearOne would pay $240,000 for the software, *see id.* at 206:7–14 ("Q. Okay. And then the next sentence says 'This itself will be a huge loss for us.' A. Yes. Q. So you're saying an additional 200,000 for a total of 320,000 – A. Correct. Q. – will be a loss to PathPartner? A. Yes."). Thus, a reasonable jury could determine that it was reasonably foreseeable to PathPartner, at the time of contracting, that if it failed to deliver the completed software, "ClearOne would have to obtain the software through another avenue at greater expense." *See* ECF No. 149 at 12; *see also Crowell Corp. v. Himont USA, Inc.*, No. 86C-11-125, 1994 Del. Super. LEXIS 557, at *10 (Dec. 7, 1994) ("Issues of . . . reasonable forseeability [sic] are questions of fact for a jury.").

Accordingly, the court concludes that there is a genuine issue for trial regarding the amount of ClearOne's alleged damages. Thus, the court declines to grant summary judgment in favor of PathPartner on ClearOne's breach of contract claim on the basis that ClearOne has no cognizable evidence of damages.[4]

---

[4] Because PathPartner does not address in its motion or reply brief ClearOne's contention that it is entitled to $137,765 in consequential damages, the court does not address that assertion here except to note that, under Delaware law, "whether special circumstances exist to show that consequential damages were within the reasonable contemplation of the contracting parties is ordinarily a question of fact for the jury." *See Frank Invs. Ranson, LLC v. Ranson Gateway, LLC*, No. 11101-VCN, 2016 Del. Ch. LEXIS 39, at *41 n.117 (Feb. 26, 2016).

B.      *Breach of the Covenant of Good Faith and Fair Dealing (Claim II)*

PathPartner moves for summary judgment on ClearOne's claim that PathPartner breached the covenant of good faith and fair dealing. PathPartner argues that ClearOne's claim fails as a matter of law because the conduct underlying such a claim "must not be covered in the contracts at issue," ECF No. 138 at 20 (quoting *Cartel Media Grp. LLC v. Barone*, No. N20C-12-082 SKR, 2021 WL 3673215, at *5 (Del. Super. Ct. Aug. 16, 2021)), and "the only alleged breach by PathPartner is failure to deliver the complete package of software," which "was expressly contemplated by the terms of the Agreement." *Id.*

In response, ClearOne argues that summary judgment is inappropriate because its claim that PathPartner breached the covenant of good faith and fair dealing "is based on further acts of bad faith by PathPartner which prevented ClearOne from receiving the fruits of the Agreement." ECF No. 149 at 16. Specifically, PathPartner asserts that "the evidence adduced from PathPartner's witnesses proves ClearOne's allegations of bad faith performance—or at least shows there are factual disputes—including because PathPartner knew (or at least should have known) it could not deliver the project on-time and on budget when it persuaded ClearOne to enter the 2016 contract." *Id.* at 17. The court disagrees and grants summary judgment in favor of PathPartner on ClearOne's claim that PathPartner breached the covenant of good faith and fair dealing.

Under Delaware law, "[t]he implied covenant of good faith and fair dealing involves a 'cautious enterprise,' inferring contractual terms to handle developments or contractual gaps that the asserting party pleads neither party anticipated." *Nemec v. Shrader*, 991 A.2d 1120, 1125 (Del. 2010). "In order to set forth a claim for the implied covenant of good faith and fair dealing, there needs to be alleged some conduct by [PathPartner] that was arbitrary or unreasonable which had the effect of preventing [ClearOne] from receiving the fruits of the contracts. And such conduct

must not be covered in the contracts at issue." *See Cartel Media Grp.*, 2021 WL 3673215, at *5. Indeed, "a breach of the implied covenant claim cannot be based on conduct that the contract expressly addresses," *Khushaim v. Tullow Inc.*, No. N15C-11-212-PRW, 2016 Del. Super. LEXIS 287, at *9 (June 27, 2016), and "merely repeating the defendant's allegedly improper acts or omissions already the subject of a separate breach of contract claim is insufficient to support a claim for breach of the implied covenant of good faith and fair dealing," *Haney v. Blackhawk Network Holdings, Inc.*, No. 10851-VCN, 2016 Del. Ch. LEXIS 40, at *29–30 (Feb. 26, 2016).

Here, ClearOne has failed to produce any evidence that PathPartner engaged in "arbitrary or unreasonable" conduct that was not "covered in the contract[] at issue." *See Cartel Media Grp.*, 2021 WL 3673215, at *5. As an initial matter, in its opposition to PathPartner's motion for summary judgment on this claim, ClearOne primarily points to allegations in its complaint to support its argument that summary judgment should be denied. *See* ECF No. 149 at 17 (citing and quoting ECF No. 3 ¶¶ 14–17, 21–32). "However, 'once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried.'" *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980) (citation omitted); *see also Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) ("[The non-moving party] may not escape summary judgment [by relying on] the mere hope that something will turn up at trial."). Accordingly, in determining whether ClearOne has produced sufficient evidence to defeat summary judgment, the court disregards the allegations in ClearOne's complaint to which it points.

The only other evidence cited by ClearOne is the deposition testimony of Narayanan, PathPartner's Senior Vice President and Country Manager for North America. At best, the cited portions of the deposition testimony support the inference that Narayanan recognized that

14

ClearOne received "a fabulous deal" for the contracted software project and that he believed that "[f]or the amount of engineering effort of what [PathPartner agreed to put in], 120K was much too low." *See* ECF No. 149-1 at 171:24, 175:22–23. In addition, to the extent that the testimony establishes that Narayanan believed that the project should be terminated in December 2015—which, admittedly, is not entirely clear from the cited testimony, *see* ECF No. 149-1 at 203:5–206:14—ClearOne has presented no evidence that termination of the contracts was not conduct "covered in the contracts at issue" or that PathPartner acted in an "arbitrary or unreasonable" manner by entering the 2016 contract with ClearOne, notwithstanding Narayanan's beliefs. *See Cartel Media Grp.*, 2021 WL 3673215, at *5. Therefore, ClearOne has "fail[ed] to make a showing sufficient to establish the existence of an element essential to" its breach of the covenant of good faith and fair dealing claim. *See Celotex*, 477 U.S. at 322. Consequently, because ClearOne would bear the burden of proof at trial on that claim, the court must grant summary judgment in favor of PathPartner.

### C.     Unjust Enrichment (Claim III)

PathPartner moves for summary judgment on ClearOne's unjust enrichment claim. PathPartner argues that "[a] claim for unjust enrichment is not available if there is a contract that governs the relationship between the parties that gives rise to the unjust enrichment claim," ECF No. 138 at 21 (quoting *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 891 (Del. Ch. 2009)[5]), and

---

[5] PathPartner appears to be operating under the assumption that Delaware law applies to ClearOne's unjust enrichment claim. The court concludes that this is incorrect. The court previously determined that "[t]he parties expressly limited the issues to be dealt with under Delaware law [(i.e., '[t]he validity, interpretation, construction and performance of [the] Agreement')], choosing not to include all disputes arising out of the contract." ECF No. 58 at 6. Because ClearOne's unjust enrichment claim—as well as PathPartner's unjust enrichment counterclaim, addressed below—does not directly involve "[t]he validity, interpretation, construction and performance of [the] Agreement," the court concludes that Utah law applies. *See id.* at 6–7. Regardless of whether Delaware or Utah law is applied, though, the result is the same.

that, here, "there is no dispute that ClearOne and PathPartner entered into an enforceable Agreement, and the terms of that Agreement are the basis of ClearOne's breach of contract claim." *Id.* In response, ClearOne concedes that "there is a contract that governs the relationship between the parties," but argues that summary judgment should be denied "because PathPartner has made allegations in this action of extra-contractual obligations between the parties (which ClearOne disputes)." ECF No. 149 at 17.

> Under Utah law:
>
> Unjust enrichment "is an action initiated by a plaintiff to recover payment for labor performed in a variety of circumstances in which that plaintiff, for some reason, would not be able to sue on an express contract." A claim for unjust enrichment is an action brought in restitution, and a prerequisite for recovery on an unjust enrichment theory is the absence of an enforceable contract governing the rights and obligations of the parties relating to the conduct at issue. If there were a contract, it, rather than the law of restitution, would govern the parties' rights and determine their recovery. "Recovery under [unjust enrichment] presupposes that no enforceable written or oral contract exists."

*Ashby v. Ashby*, 227 P.3d 246, 250–51 (Utah 2010) (internal citations omitted and alteration in original).

Here, ClearOne fails to provide any explanation or information regarding how PathPartner was unjustly enriched. Likewise, ClearOne fails to direct the court's attention to any evidence of unjust enrichment. "In response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway*, 853 F.2d at 794. Thus, regardless of whether "the conduct at issue"—which the court cannot identify—is governed by the contract between ClearOne and PathPartner or is "extra-contractual," as ClearOne contends, ECF No. 149 at 17, the court must grant summary judgment in favor of PathPartner on ClearOne's unjust enrichment claim. *See Celotex*, 477 U.S. at 322 (explaining that summary judgment is required if

16

the party that bears the burden of proof at trial "fails to make a showing sufficient to establish the existence of an element essential to that party's case").

D.      *Whether PathPartner Failed to Exercise Reasonable Care*

PathPartner further moves for summary judgment on all of ClearOne's claims, asserting that "ClearOne has not provided any evidence that PathPartner breached the standard of care required for software developers to perform under a contract" and, therefore, "ClearOne's Complaint should be dismissed." ECF No. 138 at 11. Specifically, PathPartner contends that "[e]stablishing the appropriate standard of care is a requirement for making out a prima facie breach of contract claim against a professional." *Id.* In response, ClearOne argues that "[t]he elements of breach of contract . . . do not include establishing a standard of care" and that it "has alleged and can show that PathPartner did not complete the project, and did not complete the project on time—which are breaches of contract not requiring expert testimony or testimony on the standard of care." ECF No. 149 at 16. ClearOne further argues that "[t]he cases cited by PathPartner, which discuss negligence and other similar claims, are inapposite." *Id.* at 16 n.5. The court agrees.

First, as ClearOne notes, under Delaware law, the plaintiff in a breach of contract action is not required to establish that the defendant breached some professional standard of care, even if the contract involves professional services. *See VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). Rather, the plaintiff must establish a breach of an *obligation imposed by the contract. Wenske v. Blue Bell Creameries, Inc.*, No. 2017-0699-JRS, 2018 Del. Ch. LEXIS 221, at *20 (July 6, 2018) ("Under Delaware law, a breach of contract claim comprises three elements: (1) the existence of a contract; (2) a breach of an obligation imposed by that contract; and (3) resultant damages."). Here, ClearOne has produced evidence that, under the contract at

17

issue, PathPartner was required to deliver a complete software solution and that PathPartner breached that obligation. Because any reasonable lay juror can understand the instant alleged obligation (i.e., to deliver the completed project) and whether it was breached (i.e., either the completed project was delivered or it was not) in the absence of expert testimony, no expert testimony is required to establish the standard of care for software developers in this case.

The cases cited by PathPartner do not suggest otherwise. Indeed, all of the cases are either negligence cases, in which establishing the standard of care is essential in order to determine whether it was breached (i.e., whether the defendant was negligent), *see, e.g.*, *Robinson v. J.C. Penney Co.*, 977 A.2d 899, 899 (Del. 2009) (stating that "the standard of care applicable to a professional can be established only through expert testimony" in a case in which the plaintiff claimed that "security guards had negligently and/or willfully and wantonly caused her to sustain personal injuries and economic losses"); *Money v. Manville Corp. Asbestos Disease Comp. Tr. Fund*, 596 A.2d 1372, 1374, 1376–77 (Del. 1991) (discussing expert testimony in the context of claims for "negligence, misrepresentation and intentional tort"), or a negligence and breach of contract case in which expert testimony was required to establish the obligation under the contract, *see White v. Mood*, No. S18C-02-012RFS, 2020 WL 996736, at *7 (Del. Super. Ct. Mar. 2, 2020) ("The Plaintiffs are alleging that [the defendant] failed to abide by the standards and codes for home inspectors. They assert that [the defendant] failed to properly perform the inspection, resulting in a breach of the contract. Such information is outside of the common knowledge of a lay person. Therefore, an expert would be required."). Because it is undisputed that PathPartner did not deliver to ClearOne the complete package of software that was contemplated by the Agreement, no expert testimony is required in this case to establish PathPartner's obligation under the contract and whether that obligation was breached. *See* ECF No. 138 at 1 ("It is also undisputed

that while certain 'deliverables' were delivered [to ClearOne], ClearOne did not receive the complete package of software."). Therefore, the court declines to grant summary judgment in favor of PathPartner on ClearOne's breach of contract claim[6] on the basis that "ClearOne has not provided any evidence that PathPartner breached the standard of care required for software developers to perform under a contract."[7]

## II.   PathPartner's Motion to Exclude the Expert Testimony of Stephen Gray (ECF No. 138)

PathPartner moves to exclude the expert testimony of Stephen Gray. PathPartner argues, in part, that Gray's opinions are not admissible because (1) Gray "did not offer any opinions that require scientific, technical or other specialized knowledge" and instead "simply multiplied the number of hours PathPartner spent on the Project by the average salaries of comparable software employees in Austin, Texas," ECF No. 138 at 13; (2) Gray "did not provide any reliable principles, methods, or industry standards to support his findings," *id.* at 14; and (3) Gray "did not provide any evidence that his opinions are based on facts that experts in this field would rely on," and he "repeatedly explained [during his deposition] that he lacked adequate knowledge to give an informed opinion on either ClearOne or PathPartner's ability (and [consequently], their respective costs) to develop software," *id.* at 16.

In response, ClearOne argues that (1) Gray's opinions require scientific, technical, or other specialized knowledge because Gray used his experience "to determine the information used in his calculation, including the nature of the resources PathPartner allocated to the ClearOne project

---

[6] The court does not address ClearOne's claims for breach of the covenant of good faith and fair dealing (claim II) or unjust enrichment (claim III) here because it has already granted summary judgment in favor of PathPartner on those claims.

[7] The court also notes that it is well within the common knowledge of a lay person that it is improper for a software developer—or any professional or person, for that matter—to contract to deliver a product and then to fail to so deliver.

. . . , and to determine the equivalent rate of such resources for contract work in Austin, Texas," ECF No. 149 at 18; and (2) Gray's opinions are reliable because, first, "in forming his opinions, Gray 'relied upon [his] knowledge and experience in the practice of complex software definition, design, development, test and deployment,' and upon industry texts 'to the extent those books . . . inform [his] experience regarding software development" and, second, as "Gray explicitly stated in his report," "the facts and data he relied upon . . . 'are of the type reasonably relied upon by experts in [his] profession,'" *id.* at 19–20 (citations omitted). Because the court concludes that ClearOne has failed to prove that Gray's opinions are reliable and that they must be excluded on that basis, the court limits its discussion to the parties' arguments regarding reliability.

Under Federal Rule of Evidence 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Accordingly, "Rule 702 imposes a gatekeeping function on district courts to ensure expert testimony is admitted only if it is relevant and reliable." *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1217 (10th Cir. 2016).

The United States Supreme Court has identified "four nonexclusive factors that [a] trial court may consider in assessing reliability: (1) whether the opinion at issue is susceptible to testing and has been subjected to such testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has

been accepted in the scientific community." *Hollander v. Sandoz Pharms. Corp.*, 289 F.3d 1193, 1205 (10th Cir. 2002) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993)); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). "The proponent of expert testimony bears the burden of showing that the testimony is admissible." *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013).

Here, ClearOne has failed to demonstrate, by a preponderance of the evidence, that Gray's testimony is admissible. As an initial matter, apart from conclusory statements, neither ClearOne nor Gray has presented any evidence that Gray used a reliable methodology to calculate "how much it would cost ClearOne to develop software it contracted with Defendant PathPartner . . . to develop." *See* ECF No. 138 at Ex. F ¶ 1. Specifically, although Gray's report assures the court that "[t]he facts and data on which [he] based the opinions reflected in [the] report are of a type reasonably relied upon by experts in [his] profession" and that he "utilized conventional methodologies in [his] analysis," Gray does not cite a single source to support those assertions. *See id.* ¶ 2. Similarly, in responding to PathPartner's argument that Gray did not use a reliable methodology, ClearOne merely parrots Gray's contention "that the facts and data he relied upon . . . 'are of the type reasonably relied upon by experts in [his] profession,'" without providing any outside support for that statement. *See* ECF No. 149 at 20 (quoting Gray's report (ECF No. 138 at Ex. C)). Moreover, when Gray was asked whether he consulted any authoritative publications "for purposes of doing [his] analysis in forming [his] opinions," Gray responded:

> I'm trying to think if I actually pulled anything off the shelf or brought anything up. I – I don't – I think the fair statement is that I did not rely upon them in the forming of my opinions other than to the extent that those books inform me in an experiential – inform my experience regarding software development. So I did not – I don't recall having been influenced by those directly, but they certainly inform me and provide my expertise as a software development expert for this purpose. So I don't recall having pulled anything off the shelf. I might have. I might have looked at some stuff.

ECF No. 138 at Ex. C at 129:14–16, 130:11–23. Thus, in evaluating whether Gray used a reliable methodology, the court is merely left with Gray's self-interested assurance that he used a reliable methodology. This is not sufficient. *See Wells v. Kawasaki Motors Corp., U.S.A.*, No. 2:16-cv-01086-DN, 2019 U.S. Dist. LEXIS 194744, at \*10 (D. Utah Nov. 6, 2019) ("[A]ccording to the Tenth Circuit, an expert's 'assurance that the methodology and supporting data is reliable will not suffice' as proof that the expert's proposed opinions are, in fact, reliable." (quoting *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999)); *see also Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc) ("The party seeking to have the district court admit expert testimony must demonstrate that the expert's findings and conclusions are based on the scientific method, and, therefore, reliable. This requires some objective, independent validation of the expert's methodology. The expert's assurances that he has utilized generally accepted scientific methodology is insufficient.").

The court further notes that neither Gray nor ClearOne has presented any evidence that Gray's opinion or methodology has been subjected to peer review, has a known or potential rate of error, or is accepted by experts in his profession. *See Daubert*, 509 U.S. at 590. The court finds this particularly problematic because of its own concerns regarding Gray's methodology. First, by Gray's own admission, his methodology does not even produce a particularly accurate estimate of how much it would cost ClearOne to develop the software. Indeed, Gray opines that "the actual cost for ClearOne to develop the project would be *significantly greater* than the minimum cost set forth in this report." ECF No. 138 at Ex. F ¶ 14 (emphasis added); *see also id.* ¶¶ 17–18 ("In my opinion, the minimum cost to ClearOne to develop the project is $5,210,490.64. It is also my opinion that this estimate *substantially understates* the actual cost for ClearOne to develop the project, as there are several aspects of cost that are not included in the analysis." (emphasis added)).

Along those lines, Gray's analysis strikes the court as somewhat backwards. Gray bases his calculation on the number of hours that PathPartner worked on the project. *See id.* at Ex. C at 207:11–208:13. As a result, it appears that Gray's calculation is actually how much it would cost ClearOne to develop software or components of software that PathPartner has already developed and delivered to ClearOne. Although it may be true that, if ClearOne were to complete the project itself, it would not be able to use much of what PathPartner delivered, Gray's report does not appear to account for the extent to which ClearOne could build on what PathPartner actually did deliver to complete the project. Moreover, the true measure of the cost to ClearOne—that is, how much it would cost ClearOne to go from what PathPartner delivered to the completed software— appears to be completely absent from Gray's analysis because there is no data regarding how long it would have taken PathPartner to complete the latter stages of the project that it did not complete. *See id.* at Ex. F ¶ 18 ("Finally, because PathPartner withdrew from the project before its completion, there is no and/or incomplete work effort data for the latter phases of the project."). Therefore, the court further questions the reliability of Gray's methodology and analysis.

In addition, the court is troubled by the fact that Gray did not evaluate the design and development capabilities of ClearOne and PathPartner before conducting his analysis. *See id.* at Ex. C at 167:22–25 ("I didn't do any analysis of ClearOne's capabilities with regard to development and – well, development in particular, the conferencing collaboration, and network streaming solutions."); *id.* at 169:2–4 ("I didn't do any analysis of PathPartner's capabilities in . . . their application development capabilities."). Although it is true that Gray took into account the fact that "PathPartner claimed to have expertise in such projects (where ClearOne did not, and does not)" and that "PathPartner had already-existing technology to build upon (which ClearOne did not, and does not)," *id.* at Ex. F ¶ 14, the size of the capability gap between the firms seems

23

critically important in rendering a reasonably accurate estimate of how much it would cost ClearOne to complete the project. Furthermore, the court questions whether it was appropriate for Gray to take PathPartner's representations regarding its expertise and capabilities at face value because, after all, PathPartner ultimately failed to deliver the completed software project. Additionally, the court notes that simply because a company has certain advantages at the outset does not necessarily mean that a company with skilled employees cannot eventually outperform it. Therefore, the court concludes that Gray's failure to evaluate the design and development capabilities of ClearOne and PathPartner raises additional concerns regarding the reliability of his analysis.

In sum, ClearOne has failed to prove, by a preponderance of the evidence, that Gray's opinions are sufficiently reliable to be admissible. *See Conroy*, 707 F.3d at 1186. Accordingly, the court excludes Gray's report and testimony.

### III.   PathPartner's Motion to Exclude the Testimony of Derek Graham and Ketan Merchant (ECF No. 138)

PathPartner moves to exclude the testimony of ClearOne employees Derek Graham and Ketan Merchant. PathPartner argues that Graham and Merchant should be precluded from testifying as non-retained expert witnesses because Rule 26 of the Federal Rules of Civil Procedure requires parties to "provide the primary facts [non-retained expert] witness[es] will rely on in stating their opinion[s]" and "ClearOne's disclosures for Derek Graham and Ketan Merchant do not satisfy the requirements of Rule 26." ECF No. 138 at 18–19. Specifically, PathPartner contends that ClearOne's disclosure "[*did*] *not provide a single fact* that the non-retained experts will rely on in offering their opinions." *Id.* at 19. PathPartner further contends that "ClearOne has not provided any summary of the opinions that Mr. Graham and Mr. Merchant intend to offer at trial." ECF No. 159 at 10.

In response, ClearOne argues that, "[c]ontrary to PathPartner's argument, ClearOne was not required to provide a 'detailed' report of [Graham's and Merchant's] testimony, and the disclosure provided was sufficiently detailed to 'obviate the danger of unfair surprise.'" ECF No. 149 at 24 (citation omitted). ClearOne further asserts that PathPartner was aware of the disclosure for months—and even had the opportunity to depose both Graham and Merchant—but did not object to the disclosure until July 22, 2021, which was the day before PathPartner intended to depose Graham and Merchant and the close of expert discovery. ClearOne also contends that, as employees deeply involved in the contract and project between ClearOne and PathPartner, Graham and Merchant are fact witnesses with personal knowledge regarding the requirements of the contract and the scope of the project. Thus, according to ClearOne, Graham and Merchant "cannot be barred from testifying about whether work performed by PathPartner fell inside or outside of [the requirements of the Agreement]—even if ClearOne never disclosed them as expert witnesses on this subject." *Id.* at 23.

Under Federal Rule of Civil Procedure 26(a)(2)(C), "if the [expert] witness is not required to provide a written report, [the witness's] disclosure must state: (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify."

> The advisory committee notes of the 2010 amendment state that a disclosure under Rule 26(a)(2)(C) is "considerably less extensive than the [retained expert] report required by Rule 26(a)(2)(B)" and further warns courts to "take care against requiring undue detail." Courts have found the requirements to be relatively minimal. Generally, if the party provides "a brief account that states the main points" and effectively "obviate[s] the danger of unfair surprise," the disclosures will meet the 26(a)(2)(C) requirements.

*Marland v. Asplundh Tree Expert Co.*, No. 1:14-cv-40-TS, 2017 U.S. Dist. LEXIS 15895, at *2 (D. Utah Feb. 3, 2017) (internal citations omitted and alterations in original). However, a party

"cannot satisfy its obligations under Rule 26(a)(2)(C) by merely pointing to large swaths of information, like general references to otherwise unidentified deposition testimony." *Tuft v. Indem. Ins. Co. of N. Am.*, No. 19-cv-01827-REB-KLM, 2021 U.S. Dist. LEXIS 87338, at *3 (D. Colo. Feb. 18, 2021). Moreover, "an adequate summary of opinions alone [does not] absolve a disclosing party of the obligation to identify the factual basis for those opinions." *See Nosewicz v. Janosko*, No. 16-cv-00447-PAB-KLM, 2019 U.S. Dist. LEXIS 153242, at *15–16 (D. Colo. Aug. 19, 2019); *see also Seeley v. Home Depot U.S.A., Inc.*, No. 17-cv-00584-PAB-NYW, 2018 U.S. Dist. LEXIS 152421, at *14 (D. Colo. Sept. 6, 2018) ("The Advisory Committee's note to the 2010 amendments states that the amended version of Rule 26(a)(2)(C) 'mandate[s] summary disclosures of the opinions to be offered by expert witnesses who are not required to provide reports under Rule 26(a)(2)(B) *and of the facts supporting those opinions*.'" (quoting and adding emphasis to FED. R. CIV. P. 26 advisory committee's notes to 2010 amendment)); *Thornton v. Barrett*, No. CIV-19-1003-SLP, 2020 U.S. Dist. LEXIS 261067, at *14–15 (W.D. Okla. Dec. 11, 2020) ("[H]ere, a proper summary of the facts underlying [the expert's] opinion is required. The Court does not require 'undue detail' from Defendant simply by requiring Defendant to disclose the correct information required by Rule 26(a)(2)(C).").

Here, ClearOne disclosed that Graham and Merchant would:

> more specifically address section three of the Balyeat Report and opine that the work in each row of the table set forth on pages 10 through 20 of the Balyeat Report is not in fact work beyond the scope of the parties' agreement, based upon the language in the parties' agreement and how the description of the work set forth in the table relates to the project requirements, and as generally informed by these experts' knowledge of the project, software development generally, and the technology described, among other things.

ECF No. 138-2 at 30–31. As an initial matter, the court disagrees with PathPartner's assertion that "ClearOne has not provided any summary of the opinions that Mr. Graham and Mr. Merchant

intend to offer at trial." ECF No. 159 at 10. Rather, it is evident that Graham and Merchant will testify to their opinion that "the work in each row of the table set forth on pages 10 through 20 of the Balyeat Report is not in fact work beyond the scope of the parties' agreement." ECF No. 138-2 at 31. That said, the court agrees with PathPartner that ClearOne insufficiently discloses the facts supporting that opinion. The "facts" on which Graham and Merchant appear to rely are "the language in the parties' agreement," "the project requirements," their "knowledge of the project," their knowledge of "software development generally," their knowledge of "the technology described," and "other things." *Id.* Referring to such vague, "large bodies of material as sources of facts . . . without stating a brief account of the main points from those large bodies of material . . . fails to meet the standard of providing a 'summary of the facts'" under Federal Rule of Civil Procedure 26(a)(2)(C). *See Little Hocking Water Ass'n v. E.I. du Pont de Nemours & Co.*, No. 2:09-cv-1081, 2015 U.S. Dist. LEXIS 29918, at *25 (S.D. Ohio Mar. 11, 2015); *see also Thornton*, 2020 U.S. Dist. LEXIS 261067, at *12 ("While it is true that Defendant has at least proffered [the expert's] opinion, Defendant has still failed to make a sufficient disclosure under Rule 26. Defendant has merely stated what [the expert's] ultimate opinion will be and listed categories of documents or information upon which this opinion was based or that [the expert] is expected to 'explain.' Defendant has not summarized the facts underlying her opinion."). Therefore, the court concludes that ClearOne's disclosure regarding Graham and Merchant's testimony is insufficient.[8]

While the court holds that ClearOne's disclosure with respect to Graham and Merchant does not comply with Federal Rule of Civil Procedure 26(a)(2)(C), the court must now determine the proper remedy. Under Federal Rule of Civil Procedure 37(c)(1), "[i]f a party fails to provide

---

[8] The court notes that Graham's and Merchant's testimony regarding the table included in section 3 of Balyeat's report is likely moot because, as explained below, the court excludes that portion of Balyeat's report.

information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." "Whether a disclosure violation is harmless 'is entrusted to the broad discretion of the district court.'" *Turner v. Phillips 66 Co.*, 791 F. App'x 699, 705 (10th Cir. 2019) (unpublished) (citation omitted). The Tenth Circuit has identified that "the following factors should guide [the district court's] discretion: 1) the prejudice or surprise to the party against whom the testimony is offered; 2) the ability of the party to cure the prejudice; 3) the extent to which introducing such testimony would disrupt the trial; and 4) the moving party's bad faith or willfulness." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). The court determines that all four factors support the conclusion that ClearOne's disclosure violation is harmless.

First, the prejudice or surprise to PathPartner of permitting Graham and Merchant to testify is minimal because as early as April 9, 2021 ClearOne disclosed that Graham and Merchant were "expected to testify that the work described in pages 10 through 20 of [Balyeat's expert report] was work falling within the scope of the parties' Software Development and License Agreement." ECF No. 138-2 at 24. In addition, PathPartner was given the opportunity—and was even planning to—depose Graham and Merchant before the close of expert discovery. Next, ClearOne can cure any prejudice by supplementing its disclosure to provide and specify the primary facts that underlie Graham's and Merchant's opinions. In addition, after ClearOne supplements its disclosure, the court will afford PathPartner another opportunity to depose Graham and Merchant. Moreover, because a trial date has yet to be set, the court finds that allowing Graham's and Merchant's testimony would not disrupt trial. The court also notes that there is no evidence that ClearOne acted in bad faith or willfully provided an insufficient disclosure. Therefore, the court grants

without prejudice PathPartner's motion to bar Graham and Merchant from testifying as non-retained expert witnesses. Within fourteen days of entry of this order, ClearOne may serve on PathPartner a fifth amended expert disclosure of Graham's and Merchant's opinion that complies with Federal Rule of Civil Procedure 26(a)(2)(C), if it so chooses. [9]

## IV.    ClearOne's Motion to Exclude the Expert Reports and Testimony of Jeffrey Balyeat (ECF No. 130)

ClearOne moves to exclude the expert testimony of Jeffrey Balyeat. ClearOne argues that Balyeat's reports and testimony are inadmissible because (1) "Balyeat is not qualified as an expert, through either education or experience," (2) the opinions included in portions of Balyeat's reports "will not help the trier of fact," and (3) other opinions in the reports "are based on insufficient facts/data and are the product of unreliable principles and methods and/or the unreliable application of such principles and methods to the facts of the case." ECF No. 132 at 2. The court addresses each argument in turn.

### A.  Whether Balyeat Is Qualified to Testify as an Expert

ClearOne contends that Balyeat is not qualified to offer an expert opinion in this case. Specifically, ClearOne notes that "[t]his case involves an agreement between the parties for the development of wireless content sharing software" and that "Balyeat testified he has *no* experience with wireless content sharing software." *Id.* at 3. ClearOne further notes that although Balyeat "was responsible for the sale, implementation, and custom development of the Microsoft Dynamics AX product for BKD customers" when he was Director of IT Consulting and a Principal at BKD LLP, "Balyeat repeatedly admitted in his deposition that he is 'not a technical coder

---

[9] The court notes that its conclusion that ClearOne's disclosure regarding Graham's and Merchant's testimony was deficient does not preclude Graham and Merchant from testifying as fact witnesses at trial.

person,'" and Balyeat's opinions in this case "requir[e] technical knowledge and familiarity with wireless content sharing." *Id.* at 4–5.

PathPartner responds[10] that "[t]hrough his various professional positions, Mr. Balyeat became a seasoned and widely recognized (and much in-demand) IT professional with 22 years of experience in Enterprise Resource Planning ('ERP') implementations and software development projects, project management, cost analysis, internal controls, and business experience." ECF No. 158 at 6. PathPartner contends that, as a result, Balyeat is "an expert with respect to the processes involved in the implementation of custom-designed software-based business solutions involving the use of third-party coding professional[s]." *Id.* Therefore, according to PathPartner, it may rely on Balyeat's testimony to support:

> (i) its position that, pursuant to the terms of the contract, and regularly accepted industry standards, PathPartner delivered the software it was hired to develop through each phase of the project that was completed prior to the cessation of the Project; (ii) its position that any failure on the part of PathPartner to make *all* deliverables under the contract was the result of ClearOne's unreasonable departure [from] industry standards (and/or the reasonable expectations of parties to such a software development contract; [and (iii)] the scope and value of work that was performed, and deliverables that were made, by PathPartner at the request of ClearOne that were not contemplated by the Software Development Agreement and for which PathPartner was never paid.

---

[10] ClearOne complains that PathPartner filed a 12-page, 3849-word opposition brief, despite District of Utah rules that limit opposition briefs on motions to exclude expert testimony to 10 pages or 3100 words. *See* DUCıvR 7-1(a)(4)(D)(i). The court reminds PathPartner's counsel that "a party must first obtain a court order authorizing the additional pages or words before filing a motion, response, or reply that exceeds the page or word limits in section 7-1(a)(4)." DUCıvR 7-1(a)(6)(A). Moreover, "[t]he motion must be filed, and the order obtained, before filing the overlength motion, response, or reply." *Id.* Although PathPartner submitted a brief that disregards these rules, the court accepts it in this instance only. If counsel disregards this rule again in this or another case before this court, the court will exercise its discretion to impose sanctions under DUCıvR 7-1(e)(2)(j).

ECF No. 158 at 5. PathPartner further stresses that, contrary to ClearOne's assertions, "PathPartner will not rely on [Balyeat's] testimony to explain the software at issue and the technical aspects of this project." *Id.*

In assessing whether a witness is qualified to offer expert testimony, "[t]he dispositive question" is whether the issue on which the witness will testify is "within the reasonable confines" of the witness's specialized knowledge. *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001). "That specialized knowledge can be acquired through 'experience' and 'training.'" *United States v. Garza*, 566 F.3d 1194, 1199 (10th Cir. 2009) (quoting FED. R. EVID. 702); *see also Vigil v. Burlington N. & Santa Fe Ry.*, 521 F. Supp. 2d 1185, 1203 (D.N.M. 2007) ("Rule 702 explicitly provides that expert status may be based on 'knowledge, skill, experience, training, or education.'" (quoting FED. R. EVID. 702)). Indeed, "Rule 702 does not preclude experience, 'or experience in conjunction with other knowledge, skill, training or education,' from providing a 'sufficient foundation for expert testimony,' as experience may be the 'predominant, if not sole, basis for a great deal of reliable expert testimony.'" *Thompson v. APS of Okla., LLC*, No. CIV-16-1257-R, 2018 U.S. Dist. LEXIS 164128, at *17–18 (W.D. Okla. Sept. 25, 2018) (quoting FED. R. EVID. 702, advisory committee notes to 2000 Amendments). In addition, "[a]s long as an expert stays within the reasonable confines of his subject area . . . a lack of specialization does not affect the admissibility of [the expert] opinion, but only its weight." *United States v. Talmage*, No. 1:16-cv-00019-DN, 2019 U.S. Dist. LEXIS 70805, at *4–5 (D. Utah Apr. 24, 2019) (quoting *Ralston*, 275 F.3d at 970); *see also Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007) ("An expert is not necessarily unqualified simply because her experience does not precisely match the matter at hand." (citing *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001)); *Henry v. Champlain Enters.*, 288 F. Supp. 2d 202, 220 (N.D.N.Y. 2003)

("[L]iberality and flexibility in evaluating qualifications should be the rule; the proposed expert should not be required to satisfy an overly narrow test of his own qualifications. . . . Accordingly, assuming that the proffered expert has the requisite minimal education and experience in a relevant field, courts have not barred an expert from testifying merely because he or she lacks a degree or training narrowly matching the point of dispute in the lawsuit." (internal quotation marks and citations omitted)).

Here, PathPartner has established that Balyeat, through his professional experiences, is qualified to render expert opinions in this case. Specifically, PathPartner has established that, before joining BKD, Balyeat had experience with "the custom development process," in particular "[w]riting specs, generating requirements, [and] testing custom software." ECF No. 132-4 at 31:19–32:3. Moreover, during Balyeat's time at BKD, he "was a leading provider of implementation, support, streamlining and training services for the firm's Dynamics AX ERP and Custom Software Development practice," and he "managed 175+ ERP implementations and Software Development projects, both domestic and abroad." ECF No. 130-5. These projects often involved "writ[ing] custom code to fill in [clients'] additional requirements where there wasn't a software off the shelf," ECF No. 132-4 at 40:2–6, and while managing these projects, Balyeat would frequently "writ[e] specs, follow[] up with people on testing, meet[] with developers on the work they were involved with and what the timeline was, meet[] with prospective clients to talk about new work, [and] meet[] with existing clients to talk about upgrades and expanding their use of a software," *id.* at 44:13–18. Accordingly, although Balyeat may have no experience developing the specific type of software at issue in this case (i.e., wireless content sharing software) and may not be a "technical coder person," *see id.* at 27:20, PathPartner has established that Balyeat has significant experience and knowledge regarding the custom software development process and the

32

management of such projects. *See Talmage*, 2019 U.S Dist. LEXIS 70805, at *4–5; *Furmanite Am.*, 506 F. Supp. 2d at 1129; *Henry*, 288 F. Supp. 2d at 220. Thus, Balyeat is qualified to offer expert opinions regarding such issues, as well as regarding industry standards. That said, as PathPartner acknowledges, Balyeat is not qualified to "explain the software at issue" or to provide testimony regarding "the technical aspects" of the project because Balyeat is "not a technical coder person" and, by his own admission, does not have expertise with respect to such subjects. *See* ECF No. 158 at 5; ECF No. 132-4 at 27:20.

B.    *Whether Balyeat's Report and Testimony Will Assist the Trier of Fact*

ClearOne moves to exclude sections 2, 6, and 7 of Balyeat's April 2, 2021 report. ClearOne contends that these sections of the report should be excluded because, for various reasons, they "will not help the trier of fact." ECF No. 132 at 7. The court addresses each section in turn.

1)    Section 2

Section 2 of Balyeat's report examines PathPartner's compliance with project management "best practices" while it worked on the software at issue. Specifically, using identified documents, Balyeat determined whether PathPartner complied with BKD's "On Track" project management methodology, which "has been used to implement thousands of software implementations and development projects." ECF No. 132-1 at 6. ClearOne argues that this section of Balyeat's report should be excluded because "Balyeat's 'opinion' is essentially a summary of certain facts and events occurring during the course of the parties' relationship" and "an expert is not needed merely to recite factual information." ECF No. 132 at 7. According to ClearOne, "PathPartner's fact witnesses can testify as to the information presented in th[is] section[] if they believe it is relevant to the claims or defenses." ECF No. 160 at 5. In addition, ClearOne appears to contend that Balyeat's opinions are irrelevant because the methodology that Balyeat's former employer used to

assess project management did not govern the project at issue, and it is undisputed that PathPartner completed all but the last milestones. *See id.* at 4 ("However, ClearOne does not dispute that it accepted and paid for all milestones completed, which comprise 5/8 of the project milestones. And whether PathPartner followed industry practice in completing the phases it *did* deliver is irrelevant. What *is* relevant is what PathPartner *did not* deliver – i.e., the last project milestones.").

PathPartner responds that section 2 identifies "the computer software industry standards by which [the] propriety of a project's 'Project Management' can and should be measured." ECF No. 158 at 7. PathPartner contends that such information, and Balyeat's application of the methodology to the project at issue, "will be extremely helpful to a jury in determining [a] key issue[] in this case; whether PathPartner complied with the Agreement to the extent possible and in conformance with industry standards." *Id.* at 8–9. PathPartner further contends that the evidence reflected in section 2 "demonstrates how [Balyeat] reached the ultimate conclusions contained in his report and explains the support for those conclusions." *Id.* at 9.

Although "[e]xperts may not merely parrot or recite factual evidence," *see Deem v. Baron*, 2:15-CV-00755-DS, 2020 WL 114138, at *13 (D. Utah Jan. 10, 2020), Balyeat does more than recite factual evidence here. Specifically, Balyeat applies factual evidence to BKD's "On Track" methodology. "[E]xpert testimony is admissible under Rule 702(a) 'if it will simply help the trier of fact to understand the facts already in the record, even if all it does is put those facts in context.'" *United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1136 (10th Cir. 2014) (citation omitted). Here, section 2 of Balyeat's report puts various activities and documents in a context that may assist the jury in determining the extent to which PathPartner complied with the contract and industry standards while developing the subject software, which may be an important issue at trial. To the extent that section 2 is not helpful to the jury—either because the underlying facts are undisputed

or BKD's "On Track" methodology is an inappropriate means of assessing PathPartner's work—the court is confident that the jury will appropriately discount the evidence and that ClearOne can attack and reveal section 2's shortcomings at trial. *See id.* ("'Doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions. The jury is intelligent enough to ignore what is unhelpful in its deliberations." (citation omitted)); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Therefore, the court declines to exclude section 2 of Balyeat's report.

　　　　2)　　　　Section 6

Section 6 of Balyeat's report first presents a "Timeline for deliverables," which is a table with columns for "Deliverable," "Due Date per Agreement," "Delivery Date," "Approved Accepted Date," "Person from ClearOne who [A]pproved/[A]ccepted [D]eliverable," "Method of [A]pproval[/]Source Doc," "Payment [D]ate," and "Payment Amount." ECF No. 132-1 at 22–31. Following the table is a note that states, in part, that "[d]elivery dates were negatively impacted by the out-of-scope work provided by [PathPartner] and the delays imposed by [ClearOne] as noted in Sections 3 and 8. This negative impact on the timeline is estimated in total to be as much as 15 months (9 months for Out-of-Scope and 6 months for delays caused by [ClearOne]) in duration." *Id.* at 31. Section 6 also includes Balyeat's "Deposition Observations." *Id.* at 32. ClearOne argues that section 6 of Balyeat's report should be excluded because it "purports to summarize certain factual events" and it involves Balyeat's "weigh[ing] the factual testimony of ClearOne's Rule

30(b)(6) designees, to conclude which deponents he believes were 'correct' and 'incorrect.'" ECF No. 132 at 7.

PathPartner responds that section 6 of Balyeat's report is admissible because Balyeat "performed a comprehensive review of PathPartner materials in the context of the Software Development Agreement" and, "[t]hrough this process, Mr. Balyeat determined that the delays imposed by ClearOne's requested out-of-scope items negatively affected PathPartner's ability to meet the deliverable deadlines outlined in the Agreement. Thus, he opines that the out-of-scope work requested by ClearOne would take a reasonable software development company about 9 months to complete." ECF No. 158 at 7–8. The court concludes that section 6 of Balyeat's report is not admissible.

First, PathPartner has failed to convince the court that the "Timeline of deliverables" included in section 6 is anything more than a summary or recital of factual information. In fact, during his deposition, Balyeat conceded that the table was merely a summary of facts that anyone, including a non-expert, could create. *See* ECF No. 132-4 at 135:3–21 ("Q. Okay. So this table is essentially summarizing documents that you've looked at of factual events? A. Correct. Q. Okay. So my question here is: Isn't this something I could do myself? A. Sure. . . . Q. Okay. So – I mean, essentially anyone could do this, whoever spends the time? A. Correct. Q. Okay. This – so this – just this table right here, Section 6 – I mean, this really isn't expert opinion. It's just a summary of information? A. It is a set of facts. That is correct."). "An expert witness must add something to the jury's understanding, and 'when an expert witness is not in a better position than the fact finder to render an opinion on a matter, it is not error to exclude that witness' testimony.'" *Kane v. Lewis*, Civil No. L-08-1157, 2010 U.S. Dist. LEXIS 164819, at *3 (D. Md. Dec. 7, 2010) (quoting *Noland v. French*, 134 F.3d 208, 217 (4th Cir. 1998)); *see also United States v. Hall*, 93 F.3d 1337, 1343

36

(7th Cir. 1996) ("[A]n expert's opinion is helpful only to the extent the expert draws on some special skill, knowledge, or experience to formulate [his] opinion; the opinion must be an *expert* opinion (that is, an opinion informed by the witness's expertise) rather than simply an opinion broached by a purported expert. Unless the expertise adds something, the expert at best is offering a gratuitous opinion, and at worst is exerting undue influence on the jury that would be subject to control under Rule 403." (internal citation and quotation marks omitted)). Here, PathPartner has failed to demonstrate how Balyeat's testimony regarding the "Timeline of deliverables" would add to the jury's understanding of the information contained in the table.

Moreover, Balyeat provides no explanation or justification for his conclusion at the end of that table that "the negative impact on the timeline [caused by ClearOne] is estimated in total to be as much as 15 months (9 months for Out-of-Scope and 6 months for delays caused by [ClearOne]) in duration." ECF No. 132-1 at 31. Although expert testimony can be based on experience, *see Tudor v. Se. Okla. State Univ.*, 13 F.4th 1019, 1030 (10th Cir. 2021), the expert "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (citation omitted). "Indeed, the Advisory Committee Notes [to Rule 702] provide that '[t]he trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted.'" *McGraw v. Cobra Trucking, Inc.*, No. 20-cv-01032-NYW, 2021 U.S. Dist. LEXIS 210115, at *17–18 (D. Colo. Nov. 1, 2021) (quoting FED. R. EVID. 702, Advisory Committee Notes). "[M]ore than 'the ipse dixit of the expert' must connect the expert's conclusions to the existing data." *Rivera v. Volvo Cars of N. Am., LLC*, Civ. No. 13-00397 KG/KBM, 2015 U.S. Dist. LEXIS 179762, at *19 (D.N.M. June 18, 2015) (quoting *General Elec. Co. v. Joiner*,

522 U.S. 136, 146 (1997)). Here, neither Balyeat nor PathPartner has provided any evidence that Balyeat's calculation is "properly grounded, well-reasoned, and not speculative." *See McGraw*, 2021 U.S. Dist. LEXIS 210115, at *17–18 (quoting FED. R. EVID. 702, Advisory Committee Notes). Therefore, the opinion that Balyeat renders at the conclusion of the table may not be admitted.

Furthermore, Balyeat's "[d]eposition [o]bservations" involve Balyeat's weighing of evidence, evaluations of certain witnesses' testimony, and determinations that certain witnesses' statements were "correct" or "incorrect." ECF No. 132-1 at 32. "[A]n expert may not go so far as to usurp the exclusive function of the jury to weigh the evidence and determine credibility." *United States v. Hill*, 749 F.3d 1250, 1263 (10th Cir. 2014) (citation omitted); *see also Rowe v. DPI Specialty Foods, Inc.*, No. 2:13-cv-00708-DN-DJF, 2015 WL 4949097, at *5 (D. Utah Aug. 19, 2015) ("But an expert is not to opine on the weight of the facts or take a principal role in sifting, weighing and reciting them for the jury."). Accordingly, Balyeat's "[d]eposition [o]bservations" are inadmissible as well.[11]

Therefore, the court excludes section 6 of Balyeat's report.

   3)   Section 7

Section 7 of Balyeat's report states that PathPartner "utilized AGILE and Jira to support this project, both of which are widely used and known in the industry as accepted methodologies/tools for software development. AGILE software development is an approach to software development under which requirement and solutions evolve through the collaborative

---

[11] Balyeat's "[d]eposition [o]bservations" also include his opinion that ClearOne's damages estimate was "unreasonable" given the quotes that ClearOne received from third-parties to develop the software. To the extent that such an opinion was initially admissible, the court concludes that the opinion is now moot because, as discussed above, the court has excluded ClearOne's expert's damages calculation.

effort of self-organizing and cross-functional teams and their customer(s)/end user(s)." ECF No. 132-1 at 33. ClearOne argues that section 7 of Balyeat's report should be excluded because "Balyeat states the fact that PathPartner utilized methodologies called AGILE and Jira for the project, which is not an opinion." ECF No. 132 at 7. Thus, according to ClearOne, "if PathPartner believes the fact that it used AGILE/Jira is relevant to its claims and defenses, then PathPartner can present that fact at trial through one of its employees." ECF No. 160 at 6. PathPartner responds that, in section 7, Balyeat "opines that both software programs (with which he has experience) are widely used and known in the industry as accepted methodologies for software development and that PathPartner's developers utilized them in the appropriate manner," which is an expert opinion. *See* ECF No. 158 at 8. The court agrees.

As stated previously, "expert testimony is admissible under Rule 702(a) 'if it will simply help the trier of fact to understand the facts already in the record, even if all it does is put those facts in context.'" *Gutierrez de Lopez*, 761 F.3d at 1136. Here, section 7 of Balyeat's report does not merely state that PathPartner used AGILE and Jira to support the project at issue. Rather, Balyeat also provides the specialized knowledge that AGILE and Jira "are widely used and known in the industry as accepted methodologies/tools for software development" as context for the fact that PathPartner used those tools. *See* ECF No. 132-1 at 33. In addition, section 7 provides published articles that support Balyeat's opinion. Thus, the court declines to exclude section 7 of Balyeat's report.[12]

---

[12] The court notes, however, that contrary to PathPartner's assertion in its opposition, Balyeat does not appear to opine that "PathPartner's developers utilized [AGILE and Jira] in the appropriate manner" in section 7 of his report. *See* ECF No. 132-1 at 33–40; ECF No. 158 at 8. Therefore, the fact that the court does not exclude section 7 of the report does not necessarily mean that it is permissible for Balyeat to provide such an opinion at trial.

C.      *Whether Balyeat's Report and Testimony Are Reliable*

ClearOne moves to exclude sections 3–5 and 8 of Balyeat's report because, according to ClearOne, "the purported opinions are based on insufficient facts/data and are the product of unreliable principles and methods and/or the unreliable application of such principles and methods to the facts of the case." ECF No. 132 at 2. The court addresses the various sections in turn.

1)   Section 3

Section 3 of Balyeat's report identifies work that PathPartner performed for ClearOne that was allegedly outside the scope of the Agreement. Section 3 is primarily a table, which spans ten pages, that includes a description of such work, who requested the work, and PathPartner's "[e]ffort in man days" to complete the work. ECF No. 132-1 at 10–20. At the conclusion of the table, Balyeat provides his opinion that the value of the out-of-scope work that PathPartner performed was $1,202,560 and that "[t]he out-of-scope work requested by [ClearOne] would take a reasonable software development company as long as 9 months to complete." *Id.* at 20. ClearOne argues that the opinions contained in section 3 of Balyeat's report should be excluded because "they are not the product of Balyeat's expertise, but a mere regurgitation of information from his client." ECF No. 132 at 8. Specifically, according to ClearOne, Balyeat received the table—or an almost-identical version of it—from PathPartner, and included it in his report even though he "'did not understand what was being communicated' in the 'Description of Work' column" and had "no idea how the man-day estimates were generated, other than he was told PathPartner used some kind of tracking system to generate them." *Id.* at 8–9 (citation omitted). ClearOne also argues that Balyeat's opinion that it would take a reasonable software development company as long as 9 months to complete the out-of-scope work described in the table is unreliable because he "did not

provide a calculation in the Report to show how he came up with that figure, and he could not explain the calculation at his deposition." *Id.* at 9.

PathPartner responds that section 3 of Balyeat's report "is entirely proper . . . because his opinions rest on a reliable foundation of facts and data and the application of accepted business principles. The original source of the data is irrelevant (or, at most can be the subject of cross-examination at trial). While he obtained certain data from PathPartner, and solicited information from PathPartner about its view of out of scope work, ClearOne ignores that he applied his industry expertise and generally accepted industry standards in order to independently validate that data that was used to form his ultimate opinions." ECF No. 158 at 11. The court is not convinced.

While "[i]t is true that experts are permitted to rely on opinions of other experts to the extent that they are of the type that would be reasonably relied upon by other experts in the field[,] . . . the expert witness must in the end be giving his *own* opinion. He cannot simply be a conduit for the opinion of an unproduced expert." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 664 (S.D.N.Y. 2007); *see also Quiles v. Bradford-White Corp.*, No. 10-CV-747, 2012 U.S. Dist. LEXIS 54662, at *25–26 (N.D.N.Y. Apr. 18, 2012) ("Simply stated, an expert's opinion must be based upon his own application of principles within his expertise to the facts of the case. An expert cannot simply parrot the findings of another arrived at in another context." (citing cases supporting those propositions)). Here, PathPartner has failed to demonstrate that the table in section 3 reflects Balyeat's *own* opinion. First, it is undisputed that the substantive content in the table was prepared by PathPartner and provided to Balyeat. *See* ECF No. 158 at 11; ECF No. 132-4 at 62:16–18; ECF No. 132-6. In fact, before speaking with a PathPartner employee, Balyeat "didn't understand what was being communicated" in the "Description of Work" column in the table. ECF No. 132-4 at 63:6–12. Although PathPartner asserts that Balyeat "applied his

industry expertise and generally accepted industry standards in order to independently validate [the] data that was used to form his ultimate opinions," ECF No. 158 at 11, the evidence suggests otherwise. As PathPartner acknowledges, Balyeat is not qualified to "explain the software at issue" or to provide testimony regarding "the technical aspects" of the project. *See* ECF No. 158 at 5. Yet the "Description of Work" column in the table is replete with descriptions of the technical aspects of the software. [Citation omitted.] Moreover, during his deposition, Balyeat admitted that the numbers in the "[e]ffort in man days" column were provided by PathPartner and that he did not have access to PathPartner's time tracking system to verify that the numbers were accurate. *See* ECF No. 132-4 at 126:15–127:3 ("Q. Okay. And did they give you access to their time tracking system for you to verify that what they had done was accurate? A. They did not. . . . Q. Okay. All right. So as far as that number, it was just provided to you and other than they used a – track – some kind of system to track it, you have no further information about where that number came from? A. Correct."). Because PathPartner has failed to persuade the court that the table in section 3 of Balyeat's report is sufficiently his own opinion as opposed to the opinion of an undisclosed expert, the court excludes that table.

Moreover, the court excludes Balyeat's opinions that the value of the out-of-scope work that PathPartner performed was $1,202,560 and that completing such work "would take a reasonable software development company as long as 9 months." ECF No. 132-1 at 20. As an initial matter, the foundation for Balyeat's value calculation was the sum of the "effort in man days" that PathPartner provided and that Balyeat was unable to verify. *See* ECF No. 132-4 at 126:15–127:3. Balyeat then took that sum (2,784 man days) and increased it by 25% for "[a]llowance for testing" the out-of-scope work (696 man days) and 10% for "[a]llowance for [p]roject [m]anagement" of the out-of-scope work (278 man days), for a final estimate of 3,758

man days to complete the out-of-scope work. ECF No. 132-1 at 20. Balyeat provides no explanation or justification for increasing the estimated man days in the way that he did. Balyeat similarly provides no explanation or justification for his opinion that it "would take a reasonable software development company as long as 9 months to complete" the alleged out-of-scope work that PathPartner completed for ClearOne. *See id.* In fact, at his deposition, Balyeat failed to explain the calculation. *See* ECF No. 132-4 at 150:3–11 ("At the end of the out-of-scope table, you had a nine – nine-month estimate. But I just wanted to talk about that. You believe you do have a calculation for that nine months? A. Yes, ma'am. Q. Okay. But as you sit here today, you can't explain that to me? A. Correct. I believe I stated there is one. I have to go research."). Because neither Balyeat nor PathPartner has provided any evidence that Balyeat's calculations and estimates are "properly grounded, well-reasoned, and not speculative," the court excludes them. *See McGraw*, 2021 U.S. Dist. LEXIS 210115, at *17–18 (quoting Fed. R. Evid. 702, Advisory Committee Notes).

Accordingly, the court excludes section 3 of Balyeat's report.

2) Sections 4 and 5

Sections 4 and 5 of Balyeat's report provide Balyeat's opinions that "the development work produced by [PathPartner] was of acceptable quality and complied with the contract" and that "the time effort documented by [PathPartner] to complete this work appears to be fair and reasonable based on my own work experience and my 20+ years in the industry." ECF No. 132-1 at 21. Sections 4 and 5 also include release notes in which ClearOne praises PathPartner's work on the software. ClearOne argues that these sections of Balyeat's report should be excluded because "Balyeat did not actually review the repository where code was purportedly delivered by PathPartner to determine if it was in fact delivered," and Balyeat "admitted he had no way of

determining if what was delivered was acceptable and of good quality[] because he is 'not a coder' and 'not qualified to do that.'" ECF No. 132 at 9 (citation omitted). ClearOne further contends that Balyeat's opinion that PathPartner delivered quality work is based entirely "on positive statements by ClearOne (and a lack of critical statements by ClearOne) in the documents," and "no expertise is required to review documents for ClearOne's comments." *Id.* at 10. PathPartner responds in the same way that it did with respect to section 3 of Balyeat's report—that is, that sections 4 and 5 are reliable because Balyeat "applied his industry expertise and generally accepted industry standards" in rendering his opinions. *See* ECF No. 158 at 11. Again, the court is not convinced.

The court agrees with ClearOne that Balyeat's opinion that "the development work produced by [PathPartner] was of acceptable quality and complied with the contract" is inadmissible. At his deposition, Balyeat admitted that he never actually reviewed the code or the repository to determine what PathPartner actually delivered to ClearOne. *See* ECF No. 132-4 at 92:24–93:5 ("Q. Okay. And did you actually review the code or the repository to see if what was delivered was, in fact, what was promised? A. No. I don't – I didn't have access to the repository, and I'm not a coder. I have to rely on the specifications, the release, the release notes and the testing and the acceptance by ClearOne."). Rather, Balyeat rendered his opinion based on the release notes and communications regarding the work. *Id.* at 94:22–95:1 ("Q. Okay. So when you say you looked at the work produced by PathPartner, you looked at the communications and the release notes and documentation surrounding that work; is that true? A. True."). Neither Balyeat nor PathPartner has provided any evidence that release notes are a reliable means of assessing the quality of software. *See Conroy*, 707 F.3d at 1168 ("The proponent of expert testimony bears the burden of showing that the testimony is admissible."). Moreover, to the extent that release notes are a valid means of determining software delivery and quality, it is unclear to the court what Balyeat's testimony adds.

*Kane*, 2010 U.S. Dist. LEXIS 164819, at *3 ("An expert witness must add something to the jury's understanding."). The release notes appear to speak for themselves.

Furthermore, although PathPartner appears to suggest that Balyeat's opinions that PathPartner's work "complied with the contract" and that the time effort PathPartner expended on such work was "fair and reasonable" are reliable because they are based on Balyeat's "industry expertise and generally accepted industry standards," *see* ECF 132-1 at 21; ECF No. 158 at 11, neither Balyeat nor PathPartner has explained how such expertise and standards lead to the conclusions reached, why they are a sufficient basis for the opinions, and how they have been reliably applied to the facts at hand. *See Medina-Copete*, 757 F.3d at 1104. Therefore, the court excludes sections 4 and 5 of Balyeat's report.[13]

> 3)      Section 8

Section 8 of Balyeat's report concerns delays in the software development that were allegedly caused by ClearOne. At the conclusion of the section, Balyeat provides the opinion that "[t]he delays imposed by [ClearOne] listed in Section 8 negatively affected [PathPartner's] ability to meet the deliverable deadlines. This negative impact on the timeline is estimated to be as much as 6 months in duration based on the above findings." ECF No. 132-1 at 43. ClearOne argues that Balyeat's opinion is inadmissible because "Balyeat again did not provide a calculation in his report to show how he came up with that figure, and he could not explain the calculation at his deposition." ECF No. 132 at 10. PathPartner again responds that Balyeat's opinion is reliable because "he applied his industry expertise and generally accepted industry standards" in forming his opinions. *See* ECF No. 158 at 11. Again, PathPartner's argument fails.

---

[13] That said, the release notes included in sections 4 and 5 of Balyeat's report may still be admissible. They are not admissible through Balyeat's expert testimony, however.

As stated previously, before the court can admit expert testimony, the proponent of the testimony must establish that it is "properly grounded, well-reasoned, and not speculative." *McGraw*, 2021 U.S. Dist. LEXIS 210115, at *17-18. Here, neither Balyeat nor PathPartner has provided any explanation or justification for his opinion that ClearOne delayed the timeline for the development of the software by as much as 6 months. Without such explanation or justification, Balyeat's opinion appears to be pure speculation. Indeed, at his deposition, Balyeat could not explain how he arrived at his estimate of 6 months. *See* ECF No. 132-4 at 149:4–19 ("Q. Okay. So is there – is there, like, a document that would have a calculation or show your work to where you got this six-month figure? Or did you just kind of eyeball it based on your list on page 41? A. I did a little more than eyeball it. I don't know that there's a calculation page. I can't answer that yes or no. . . . Q. You can't provide me any documentation or more specific explanation for how you got to six months? A. Correct."). Therefore, the court excludes section 8 of Balyeat's report.

D.      *Whether Balyeat's Supplemental Report is Admissible*

In addition to Balyeat's April 2, 2021 report, Balyeat also prepared a supplemental report on May 7, 2021, in which Balyeat primarily critiqued Gray's damages opinion. Because the court has excluded Gray's expert report and testimony, much of Balyeat's supplemental report is moot. However, Balyeat does provide two opinions in his supplemental report that may be material to ClearOne's alleged damages, even in the absence of Gray's report and testimony. Specifically, Balyeat opines that, "based on [his] years of experience, [ClearOne] could in fact build on the licensed software provided by [PathPartner] along with the code developed and provided by [PathPartner] to complete what [ClearOne] determined was a solution that was needed to go to market." ECF No. 132-2 at 5. Balyeat further opines that "reasonably qualified software engineers,

building on the [l]icensed software and the development provided by [PathPartner], would be able to complete the [ClearOne] project in approximately 188 days." *Id.*

ClearOne moves to exclude these opinions, arguing that the former opinion "is not based on any technical understanding of the code or actual review of the work delivered by PathPartner" and that, for the latter opinion, "Balyeat did not provide a calculation in his Supplemental Report to show how he came up with that number, and he could not explain the calculation at his deposition." ECF No. 132 at 11. PathPartner does not respond directly to these arguments. Rather, PathPartner generally argues that the opinions that Balyeat provides in his supplemental report are admissible because he "offered his opinions based on actual, cited, generally accepted business principles and standards in the custom software development and implementation industry" and "reliably applied appropriate principles and methods to the facts of the case and in his analysis of Mr. Gray's opinions." ECF No. 158 at 12. However, with respect to the opinions at issue, Balyeat cited no external sources and provided no justification—apart from his "years of experience" and the release notes in which ClearOne praised PathPartner's work—to support his opinions that ClearOne could build on the work that PathPartner performed and that such work would take approximately 188 days to complete. Without more, such opinions strike the court as far too speculative to admit. *See, e.g.*, ECF No. 132-4 at 92:24–93:3 ("Q. Okay. And did you actually review the code or the repository to see if what was delivered was, in fact, what was promised? A. No. I don't – I didn't have access to the repository, and I'm not a coder."); *id.* at 94:11–21 ("Q. Okay. So I think we kind of covered this, but going back to the first – first sentence, it says, 'I was asked to review the work produced by PathPartner for the ClearOne project . . . .' When you say, 'the work,' you're not actually talking about the – what was actually delivered to ClearOne. You didn't review that? A. You mean actually look at the code? Q. Yeah. A. No. . . . I'm not a coder.

I'm not qualified to do that."); *id.* at 165:11–18 ("So where did you come up with that number and explain to me how you calculated that. A. 188 days . . . That's a[n] estimate based on what I forecasted the error corrects would take, plus a buffer using offshore resources. I'll have to – I can't tell you anything more than that today."). Indeed, because PathPartner fails to establish in any specific way that the opinions in Balyeat's supplemental report are "properly grounded, well-reasoned, and not speculative," the court excludes them. *See McGraw*, 2021 U.S. Dist. LEXIS 210115, at \*17–18 (quoting FED. R. EVID. 702, Advisory Committee Notes).

## V.   ClearOne's Motion for Summary Judgment (ECF No. 133)

ClearOne moves for summary judgment on PathPartner's counterclaims for breach of contract, quantum meruit, unjust enrichment, and breach of the duty of good faith and fair dealing. Before considering the parties' arguments regarding each claim, the court first addresses ClearOne's argument that the court should exclude the documents on which PathPartner relies in defending against ClearOne's motion for summary judgment.

### A.   Whether PathPartner's Evidence Should Be Excluded

ClearOne argues that the court should exclude the evidence on which PathPartner relies in defending against this motion. ClearOne contends that all of PathPartner's claims are premised on work that PathPartner allegedly performed for ClearOne that was "different than or in addition to" the work prescribed in the parties' Agreement. *See* ECF No. 133 at 3–7. ClearOne asserts that, during discovery, it served an interrogatory on PathPartner and "asked PathPartner to describe the alleged different and/or additional services in the Counterclaim, but PathPartner refused to do so, and simply regurgitated the bare claims from its pleading that there were requests for such services, and that ClearOne did not pay for such services." *Id.* at 8. ClearOne further asserts that, during depositions, PathPartner executives could not identify the "different" or "additional" work.

ClearOne states that, as a result, it was completely in the dark regarding the factual basis for PathPartner's counterclaims until PathPartner filed its opposition to the instant motion and disclosed the factual basis for the claims. ClearOne argues that because "[t]here is no justification for this delay, which has severely prejudiced ClearOne's ability to form a defense," the court should "refuse to consider PathPartner's evidence as a discovery sanction pursuant to Federal Rule of Civil Procedure 37(c)(1)." ECF No. 161 at 13.

PathPartner responds that it was "not evasive during fact discovery" and that "it has provided ClearOne with specific facts to support its claim[s]." ECF No. 157 at 10. In particular, PathPartner asserts the following:

> In response to ClearOne's interrogatories, PathPartner explained that the different and/or additional services requested by ClearOne included changes in software requirements, added constraints to existing software requirements, demands for additional functionality and performance specification exceeding those identified in the Agreement, and repeated requests for work beyond the scope of the Agreement. PathPartner relied on documents exchanged with ClearOne to support these allegations. Indeed, the emails attached as exhibits herein that PathPartner exchanged during fact discovery explicitly reference the issues PathPartner identified in response to ClearOne's interrogatories.

*Id.* at 10–11. Although the court agrees with ClearOne that PathPartner should have supplemented its interrogatory response to more specifically identify the facts supporting its allegation that ClearOne requested PathPartner to "perform services that were different than or in addition to those called for" in the Agreement, *see* ECF No. 133-3 at 19–20, the court declines to exclude PathPartner's evidence.

Federal Rule of Civil Procedure 33(b)(3) commands that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." "Answering fully means that answers must be 'true, explicit, responsive, complete, and candid.'" *Embotteladora Electropura S.A. de C.V. v. Accutek Packaging Equip. Co.*, No. 16-cv-0724-GPC

(DHB), 2017 U.S. Dist. LEXIS 66148, at *9 (S.D. Cal. May 1, 2017) (citation omitted). "Although 'a responding party generally is not required to conduct extensive research to answer an interrogatory, it must make a reasonable effort to respond.'" *Williams v. Acxiom Corp.*, No. 2:15-CV-08464-ES-SCM, at *4 (D.N.J. Mar. 10, 2017) (citation omitted). In addition, although "[a] party may answer an interrogatory by specifying records from which the answers may be obtained and by making the records available for inspection," *In re Toy Asbestos*, No. 19-cv-00325-HSG, 2021 U.S. Dist. LEXIS 91016, at *18 n.2 (N.D. Cal. May 10, 2021), the records must be specified "in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could," FED. R. CIV. P. 33(d)(1). Moreover, a party "who has responded to an interrogatory . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." FED. R. CIV. P. 26(e)(1)(A).

A party that fails to follow these rules "is not allowed to use [the nondisclosed] information . . . to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). "The [c]ourt considers the following factors to determine whether the failure to timely disclose or supplement was substantially justified or is harmless under Rule 37(c)(1): '(1) the prejudice or surprise to the party against whom the testimony or evidence is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony or evidence would disrupt the trial; and (4) the moving party's bad faith or willfulness.'" *Clark v. Wilkin*, No. 2:06-cv-693-TS, 2008 U.S. Dist. LEXIS 45962, at *5 (D. Utah June 10, 2008) (quoting *Woodworker's Supply, Inc. v. Principal Mut. Life Ins.*, 170 F.3d 985, 993 (10th Cir. 1999)) (alterations omitted). "The burden to establish harmlessness is on the party who failed to make the

required disclosure." *Sowsonicut v. Roosevelt City*, No. 2:03-cv-676-DB, 2005 U.S. Dist. LEXIS 55919, at *16–17 (D. Utah Mar. 29, 2005) (citation omitted).

Here, ClearOne served an interrogatory on PathPartner that asked PathPartner to "[i]dentify any and all facts supporting [its] allegation in the Counterclaim that 'ClearOne requested that PathPartner Technology perform services that were different than or in addition to those called for' in the 2014 Contract and/or 2016 Contract." ECF No. 133-3 at 19–20. In pertinent part, PathPartner responded that:

> ClearOne repeatedly changed its software requirements, added constraints to the software requirements, demanded functionality and added performance specifications exceeding those identified in the Parties' agreements, requested out of scope work from PathPartner Ltd. for which it did not pay, and unreasonably delayed in testing and product acceptance. . . . Path Partner [sic] Ltd. refers to documents produced by this party in discovery, which documents tend to prove the foregoing facts.

*Id.* at 20. Contrary to ClearOne's assertion that PathPartner's response "simply regurgitated the bare claims from its pleading that there were requests for ['different' or 'additional'] services," ECF No. 133 at 8, PathPartner's interrogatory response did provide some detail regarding the "different" or "additional" services that ClearOne requested (e.g., "added constraints to software requirements," functionality and "performance specifications exceeding those identified" in the parties' contracts, *see* ECF No. 133-3 at 20). That said, the court agrees with ClearOne that PathPartner's response was vague and that directing ClearOne to examine the documents produced by PathPartner in discovery—which ClearOne asserts was over 14,000 pages of documents, ECF No. 161 at 14—for further details regarding such "different" or "additional" services was unreasonable. Therefore, at a minimum, PathPartner should have supplemented its interrogatory response to provide further details regarding such "different" or "additional" services as it identified and located the documents supporting its counterclaims. *See* Fed. R. Civ. P. 26(e).

Because PathPartner failed to supplement its response, the court must consider whether that failure "was substantially justified or is harmless." *See* FED. R. CIV. P. 37(c)(1). Although it is a close question, the court concludes that PathPartner's failure to supplement its interrogatory response is harmless. Applying the *Woodworker's* factors, the court first determines that although ClearOne was prejudiced in preparing its defense because of PathPartner's failure to supplement its interrogatory response, such prejudice is significantly mitigated. First, as stated previously, although PathPartner's interrogatory response was vague, it did provide some information regarding the allegedly "different" or "additional" services that are the foundation of PathPartner's counterclaims. Moreover, much of the evidence that PathPartner relies on in its opposition to ClearOne's motion is emails exchanged between PathPartner and ClearOne. Because there is no allegation that the emails are a sham or were never received by ClearOne, the reasonable inference is that ClearOne has been aware of the evidence for years, even before the current litigation began. In addition, PathPartner represents—and ClearOne does not appear to dispute—that most, if not all, of the email evidence at issue was produced during discovery. *See* ECF No. 157 at 4. Therefore, even though there may have been no explicit indication that the emails supported PathPartner's interrogatory response, at least the emails were accessible to ClearOne. Furthermore, on April 2, 2021, PathPartner disclosed Balyeat's expert report, in which he identified allegedly out-of-scope work that PathPartner performed for ClearOne. Although this disclosure was admittedly over two years after the close of fact discovery on March 1, 2019, the expert report provided ClearOne with a preview of the allegedly "different" or "additional" services on which PathPartner's counterclaims are premised almost five months before ClearOne filed the instant motion. Therefore, the court concludes that the prejudice to ClearOne in permitting PathPartner to use the evidence is relatively minimal.

Moreover, to a large extent, PathPartner has already cured the prejudice. PathPartner has now presented the evidence that it contends supports its allegation that ClearOne requested—and PathPartner performed—services "different" or "additional to" those prescribed in the Agreement. A trial date in this matter has yet to be set and is likely many months away given the court's current backlog of trials due to the disruption caused by the COVID-19 pandemic. Accordingly, ClearOne has ample time to modify its defense based on PathPartner's newly presented evidence before trial. Similarly, because a trial date has yet to be set, the court determines that permitting PathPartner to present the evidence at issue will not disrupt trial.

Furthermore, although ClearOne asserts that PathPartner's failure to timely disclose the evidence—which ClearOne contends "has *always* been in [ClearOne's] possession," ECF No. 161 at 18—is "clear evidence of PathPartner's bad faith and willfulness," *id.*, the court is not convinced. Indeed, apart from this conclusory statement, ClearOne presents no evidence that PathPartner's failure to supplement its interrogatory response was the result of bad faith or willfulness. Although not an excuse, it is just as likely that the failure was the result of an unintentional oversight. Accordingly, the court declines to conclude that PathPartner's failure to supplement was the result of its bad faith or willfulness.

Thus, the court concludes that PathPartner's failure to supplement its interrogatory response is harmless. *See Woodworker's Supply*, 170 F.3d at 993. Therefore, the court will consider PathPartner's evidence in deciding ClearOne's motion for summary judgment.

### B.     Breach of Contract (Claim I)

ClearOne moves for summary judgment on PathPartner's breach of contract claim. ClearOne argues, in part, that "there is no evidence in the record to support the existence of the new/different contract(s) PathPartner alleges were breached by ClearOne." ECF No. 133 at 14. In

particular, ClearOne contends that there is no evidence that ClearOne and PathPartner entered into a contract for services "different than" or "additional to" those prescribed in the parties' undisputed contracts. Therefore, according to ClearOne, it could not have breached a contract that did not exist.

PathPartner responds that "[d]espite ClearOne's unsupported assertions to the contrary, PathPartner has not claimed that it entered into any contract with ClearOne other than the Agreement." ECF No. 157 at 11. According to PathPartner, "ClearOne breached the Agreement by repeatedly demanding that PathPartner perform services that were beyond the scope of the Agreement." *Id.* at 12. PathPartner asserts that "[c]ourts have routinely recognized breach of contract claims in the context of demands by one party to the contract for services beyond the scope of the agreement" and that, therefore, "PathPartner does not need to demonstrate the existence of a contract other than the Agreement in order to prevail on its counterclaim." *Id.* The court disagrees.

As an initial matter, PathPartner's claim is premised on its allegation that it performed services for ClearOne that were beyond the scope of the parties' undisputed contracts (i.e., the Agreement). Thus, by PathPartner's own definition, the Agreement does not cover the services at issue. *See Poplar Brick Pres., Inc. v. Tall Trees Assoc. L.P.*, No. 89-AP-43-1-ML, 1989 Del. Super. LEXIS 519, at *4 (Oct. 18, 1989) ("Where a contract specifies the work to be performed and calculates the total amount of the contract price, any extra work would not fall under the contract if that work was not contemplated by the parties at the time the contract was executed.").

Moreover, PathPartner has not pointed to any provision in the Agreement that it alleges was breached. PathPartner has not contended that there was a provision in the Agreement that required ClearOne to compensate PathPartner for any services that it performed that were different

than or additional to those identified in the Agreement. PathPartner also has produced no evidence that ClearOne agreed to compensate PathPartner for the work that PathPartner alleges was beyond the scope of the Agreement. Accordingly, PathPartner has failed to produce evidence of a contract that required ClearOne to compensate PathPartner for the services at issue. Because an enforceable contract is an essential element of a breach of contract claim under Delaware law, *Largo Legacy Grp., LLC v. Charles*, No. 2020-0105-MTZ, 2021 Del. Ch. LEXIS 140, at *44 (June 30, 2021) ("Under Delaware law, a breach of contract claim comprises three elements: (1) the existence of a contract; (2) a breach of an obligation imposed by that contract; and (3) resultant damages." (citation omitted)), PathPartner's breach of contract claim fails as a matter of law.[14] Therefore, the

---

[14] In its opposition to ClearOne's motion for summary judgment, PathPartner cited two cases which PathPartner contends support the proposition that "[c]ourts have routinely recognized breach of contract claims in the context of demands by one party to the contract for services beyond the scope of the agreement." ECF No. 157 at 12. The court is not convinced that the cited cases— which are nonbinding because this claim is governed by Delaware law—stand for that proposition.

In the first cited case, *Green Construction Co. v. Kansas Power & Light Co.*, 1 F.3d 1005, 1009 (10th Cir. 1993), the plaintiff relied—unsuccessfully—in part, on a contract provision that provided that "[t]he COMPANY, without invalidating the Contract, may order any extra work or make any changes by altering, adding to or reducing the work, provided the Contract price be adjusted as provided herein and evidenced by written agreement." PathPartner has not identified a similar contract provision here. Moreover, the Tenth Circuit explained, in dicta, that "'[t]he extra work doctrine' allows additional compensation *only* 'for work that was not within the scope of the contract, such that the parties *could not have established a contract price of their own*.'" *Id.* at 1010 (emphasis added and citation omitted). Here, PathPartner and ClearOne could have established a contract price of their own for the services at issue. Specifically, PathPartner could have refused to perform the allegedly out-of-scope work unless and until ClearOne agreed to compensate PathPartner for such work. The ability to contract for out-of-scope work is likely materially different when the project at issue involves software development, as here, as opposed to the construction of a structure, as in *Green Construction*. *See* 1 F.3d at 1007–08.

In the second cited case, *TeamLINX LLLP v. Casper Electric, Inc.*, No. 18-CV-170-SWS, 2018 WL 9854671, at *3 (D. Wyo. Dec. 7, 2018), which also involved a construction contract, the court permitted the plaintiff's breach of contract claim to survive a motion to dismiss when the plaintiff alleged that it *had* to perform out-of-scope work at greater cost because of the defendant's actions. Specifically, the plaintiff alleged that it performed the out-of-scope work because, after informing the defendant of how much such work would cost, the "[d]efendant told [p]laintiff the change order [for the additional compensation] would be addressed at the completion of the project." *Id.* at *1. Here, PathPartner has presented no evidence that it *had* to perform the allegedly out-of-scope work

court grants summary judgment in favor of ClearOne on PathPartner's breach of contract claim. *See Celotex*, 477 U.S. at 322.

C.      *Quantum Meruit (Claim II)*

ClearOne moves for summary judgment on PathPartner's claim for quantum meruit. Because the parties' Agreement provided that it could "not be supplemented, modified, amended, released or discharged except by an instrument in writing signed by each party's duly authorized representative," ECF No. 133 at 15 (quoting ECF No. 135-1 ¶ 16.1), ClearOne argues that permitting PathPartner's quantum meruit claim to proceed "would be condoning the circumvention of the contractual requirement that all amendments to the Software Development and License Agreement be in a writing signed by the parties," *id.* Similarly, ClearOne argues that PathPartner's quantum meruit claim fails because a valid and enforceable written contract governs the subject matter at issue, thereby precluding recovery under quasi-contract. In addition, ClearOne asserts that "there is no evidence in the record" supporting PathPartner's quantum meruit claim. *Id.* at 16.

PathPartner responds that it "has established the existence of sufficient evidence . . . upon which a reasonable juror could find in its favor" on its quantum meruit claim. ECF No. 157 at 13. In particular, PathPartner contends that ClearOne requested "deliverables that were [not] contemplated within the Agreement" and that, although "PathPartner repeatedly objected to these beyond the scope requests, . . . it continued to perform these services to the benefit of ClearOne."

---

or that it received any sort of assurance from ClearOne that it would eventually compensate PathPartner for such work. Therefore, the current matter is distinguishable from *TeamLINX*.

Regardless, PathPartner has yet to identify any Delaware case in which the court held that there was a viable breach of contract claim even when, by the plaintiff's own admission, the services at issue fall outside of the relevant contract and that contract does not include a provision requiring payment for such services. Therefore, the court is not persuaded that the caselaw cited by PathPartner demonstrates that PathPartner has a viable breach of contract claim under Delaware law.

*Id.* PathPartner further contends that, "[t]o this day, ClearOne benefits from the work PathPartner performed in producing additional functionality and modifications to the software that ClearOne retained from the Project." *Id.* at 14.

"Quantum meruit is an equitable tool that allows a plaintiff to receive restitution for the reasonable value of services provided to the defendant." *Express Recovery Servs. Inc. v. Reuling*, 364 P.3d 766, 770 (Utah Ct. App. 2015) (citation omitted). "Quantum meruit literally means 'as much as [is] deserved," and "the equitable doctrine seeks to restore fairness when a contract fails." *Dudding v. Norton Frickey & Assocs.*, 11 P.3d 441, 444–45 (Colo. 2000). To establish a claim for quantum meruit under Utah law, the plaintiff must present evidence that: "(1) the defendant requested the plaintiff to perform work; (2) the plaintiff expected the defendant to compensate him or her for those services; and (3) the defendant knew or should have known that the plaintiff expected compensation." *Davies v. Olson*, 746 P.2d 264, 269 (Utah Ct. App. 1987). However, "[i]n Utah, a party may recover in quantum meruit only after legal remedies have been exhausted." *Gulf Coast Shippers Ltd. P'ship v. DHL Express (USA), Inc.*, No. 2:09-CV-00221, 2015 U.S. Dist. LEXIS 100585, at *67 (D. Utah July 28, 2015). Thus, "recovery under quantum meruit is available only when no enforceable written or oral contract exists. The relevant inquiry is whether there is an express and enforceable contract covering the subject matter of the litigation." *Id.* (internal alterations, quotation marks, citations, and emphasis omitted).

Here, there is no "express and enforceable contract covering the subject matter of the litigation." *See id.* The subject matter of the quantum meruit claim is the out-of-scope services that PathPartner allegedly performed for ClearOne and, as discussed above, there is no evidence of any

express contract between PathPartner and ClearOne governing such services. Accordingly, PathPartner's quantum meruit claim clears this initial hurdle.[15]

Similarly, the provision in the Agreement requiring modifications and amendments to the Agreement to be in writing does not foreclose PathPartner's quantum meruit claim. Viewing the evidence in the light most favorable to PathPartner, *see Est. of Booker*, 745 F.3d at 411, when ClearOne requested PathPartner to perform out-of-scope services—and PathPartner performed those services—the parties were not supplementing, modifying, or amending the original contract. Rather, ClearOne was essentially requesting, and PathPartner was producing, a different product from that prescribed in the Agreement. In addition, viewing the evidence in the light most favorable to PathPartner, *see id.*, a reasonable jury could infer from the parties' conduct that requests for additional work were excepted from the Agreement's written amendment requirement. Under Delaware law, a "prohibition against amendment except by written change may be waived or modified . . . by the course of conduct of the parties," *Pepsi-Cola Bottling Co. v. Pepsico, Inc.*, 297 A.2d 28, 33 (Del. 1972), and PathPartner has produced evidence that ClearOne repeatedly requested and demanded that PathPartner deliver additional work and that such demands were not contained in a written instrument "signed by each party's duly authorized representative," ECF No. 135-1 ¶ 16.1; *see, e.g.*, ECF Nos. 157-2, 157-9. Thus, because the conduct on which PathPartner's quantum meruit claim is based fell outside of the Agreement and was not governed

---

[15] Although PathPartner argues, with respect to its breach of contract claim, that the Agreement governs the out-of-scope work that it allegedly performed for ClearOne, PathPartner is not bound by that argument with respect to its quantum meruit and unjust enrichment claims. Indeed, a party may pursue alternative—and even contradictory—legal theories for recovery. *See Northgate Vill. Dev., LC v. Orem City*, 325 P.3d 123, 133 (Utah Ct. App. 2014). Because the court has concluded that there was no contract governing the out-of-scope work that PathPartner allegedly performed, PathPartner may pursue its quantum meruit and unjust enrichment claims.

by the Agreement's provision requiring all modifications to be in writing, the Agreement does not preclude PathPartner's quantum meruit claim.

Moreover, viewing the evidence in the light most favorable to PathPartner, *see id.*, the application of quantum meruit appears particularly appropriate here. As stated previously, quantum meruit is an equitable doctrine that "seeks to restore fairness." *Dudding*, 11 P.3d at 444–45. PathPartner has produced evidence that ClearOne requested features—such as compatibility with Windows 10—that were not part of the Agreement, and that PathPartner added those features to the software. *See generally* ECF No. 157-9. There is no evidence that these features were incorporated into the Agreement through a writing signed by both parties. It would be patently unfair if ClearOne could repeatedly request services from PathPartner, which PathPartner performed, and yet, because nothing was in writing, ClearOne could retain the benefit of those services without compensating PathPartner. The court next considers whether PathPartner has produced sufficient evidence to establish each essential element of a quantum meruit claim.

PathPartner has produced evidence, through the testimony of its Vice President of Engineering, that ClearOne requested PathPartner to perform work allegedly outside of the scope of the Agreement. *See, e.g.*, ECF No. 157-9 ¶ 5 ("In 2017, during the course of the Project, ClearOne requested that the software be compatible with Windows 10."); *id.* ¶¶ 7, 9 ("During the Project, ClearOne requested that PathPartner incorporate internalization into the software. . . . Internalization was requested by ClearOne even though PathPartner explicitly told ClearOne this was not part of the Agreement."); [citation omitted]. Furthermore, although there was no express agreement that ClearOne would compensate PathPartner for this additional work, a reasonable jury could infer, based on the circumstances, that PathPartner expected to be compensated. *See Madison v. Deseret Livestock Co.*, 574 F.2d 1027, 1036 (10th Cir. 1978). In particular, PathPartner has

produced evidence that it regarded the work as beyond the scope of the Agreement and that completing such work required it to expend additional time and effort on the software. *See, e.g.*, ECF No. 157-9 ¶¶ 5–7 ("In 2017, during the course of the Project, ClearOne requested that the software be compatible with Windows 10. Although PathPartner objected to the use of Windows 10 because that would be very expensive for PathPartner and was not [in] the terms of the Agreement, ClearOne ignored these objections. PathPartner was forced to endure significant expenses in making the change to Windows 10 in order to keep working on the Project."); [citation omitted].

Similarly, based on the evidence that PathPartner has produced, a reasonable jury could conclude that ClearOne knew or should have known that PathPartner expected to be compensated for the allegedly out-of-scope work that it performed. For instance, in an email to ClearOne, PathPartner wrote the following: "We cannot add windows 10 support with current price. It's huge effort due to change in UI and app frame work. Though only windows 7 was mentioned in the spec and estimated for[,] as good will we have gone over board and added support for windows 8.1, asking more from us here is not fair." ECF No. 157-2 at 3; *see also* 157-9 ¶ 6 ("Although PathPartner objected to the use of Windows 10 because that would be very expensive for PathPartner and was not [in] the terms of the Agreement, ClearOne ignored these objections."); [citation omitted]. PathPartner explained to ClearOne that the amended functionality was beyond the scope of the Agreement and this point needed to be addressed, but ClearOne never addressed these concerns."). Thus, the court concludes that PathPartner has produced sufficient evidence to establish a prima facie claim for quantum meruit.

That said, because the court has excluded much of PathPartner's damages expert's report and testimony, PathPartner has not identified any admissible evidence from which a jury could

determine PathPartner's alleged damages with reasonable certainty. *See Beck's Off. Furniture & Supplies v. Haworth*, Nos. 95-4018, 95-4029, 1996 U.S. App. LEXIS 20608, at *25 (10th Cir. Aug. 16, 1996) ("Damages must be proven with reasonable certainty, though not necessarily by a precise estimate." (citing *Atkin Wright & Miles v. Mountain States Tel. & Tel. Co.*, 709 P.2d 330, 336 (Utah 1985)). For a quantum meruit claim, the recovery "is the amount the parties intended as the contract price [for the contract implied in fact]. If that amount is unexpressed, courts will infer that the parties intended the amount to be the reasonable market value of the plaintiff's services." *Davies*, 746 P.2d at 269. Here, there is no evidence that ClearOne or PathPartner expressed how much ClearOne would compensate PathPartner for the services at issue. Thus, PathPartner's recovery would be the reasonable market value of its services.

Although the court has excluded the portions of Balyeat's report that are relevant to the reasonable market value of the additional work, PathPartner may be able to establish that value from documents that are already in the record or the testimony of a fact witness who has already been identified. Accordingly, the court will permit PathPartner to supplement its damages disclosures and to attempt to establish the damages associated with its quantum meruit claim through either documents already in the record or a fact witness who has already been identified.[16] The court will similarly permit ClearOne to amend its disclosures to address any such supplemental damages calculation through documents that are already in the record or a fact witness who has already been identified. PathPartner may amend its disclosures within 30 days of entry of this order. ClearOne then has 30 days to file responsive disclosures. Both parties may then conduct a single deposition each on the narrow question of the amount of damages associated with

---

[16] Because the court will permit PathPartner to supplement its damages disclosures, ClearOne's argument that PathPartner's original damages disclosures were deficient is now moot.

PathPartner's quantum meruit claim. However, the court will not allow any new expert testimony or reopen expert discovery on this issue.

      D.      *Unjust Enrichment (Claim III)*

ClearOne moves for summary judgment on PathPartner's unjust enrichment claim. Both parties present the same arguments for the unjust enrichment claim as they presented for PathPartner's quantum meruit claim.

Under Utah law, "unjust enrichment damages are recoverable when the plaintiff can show: '(1) the defendant received a benefit; (2) an appreciation or knowledge by the defendant of the benefit; (3) under circumstances that would make it unjust for the defendant to retain the benefit without paying for it.'" *Bailey-Allen Co. v. Kurzet*, 945 P.2d 180, 192 (Utah Ct. App. 1997). Here, as discussed with respect to the quantum meruit claim, PathPartner has produced evidence from which a reasonable jury could determine that ClearOne received a benefit. Specifically, PathPartner has produced evidence that, among other services, it rendered the software compatible with Windows 10, incorporated internationalization into the software, and provided "[b]etter error code handling" so that the software could "get better errors and warnings," even though such work was outside of the scope of the Agreement. ECF No. 157-6 at 4; *see generally* ECF No. 157-9. Similarly, PathPartner has produced emails from which a reasonable jury could conclude that ClearOne appreciated or had knowledge of these benefits. *See* ECF No. 157-1–8. A reasonable jury could likewise conclude that such benefits were conferred "under circumstances that would make it unjust for [ClearOne] to retain the benefit[s] without paying for [them]." *See Bailey-Allen Co.*, 945 P.2d at 192. Therefore, PathPartner has produced sufficient evidence to establish a prima facie claim for unjust enrichment.

That said, similar to its quantum meruit claim, PathPartner has no evidence of its alleged damages because the court has excluded the relevant portions of Balyeat's expert report. Thus, to the extent that the procedure that the court has outlined for PathPartner to attempt to establish its damages for the quantum meruit claim simultaneously establishes its damages for the unjust enrichment claim, PathPartner may use such evidence of damages for its unjust enrichment claim.

>     E.     Breach of the Duty of Good Faith and Fair Dealing (Claim IV)

ClearOne moves for summary judgment on PathPartner's claim that ClearOne breached the duty of good faith and fair dealing. ClearOne argues that "a claim for breach of the covenant of good faith and fair dealing must be based on an underlying contract" and that, consequently, PathPartner's claim fails as a matter of law because "the only contract PathPartner alleges was breached in its Counterclaim is the non-existent contract for services different, or in addition to, the [Agreement]." ECF No. 133 at 16–17.

PathPartner responds that "ClearOne breached the covenant of good faith and fair dealing by repeatedly asking for services beyond the scope of the Agreement and delaying its payments to PathPartner." ECF No. 157 at 14. PathPartner further asserts that "ClearOne's entire argument on this issue is premised on the flawed assertion that PathPartner has alleged the breach of a non-existent contract" when, in fact, PathPartner alleges that "ClearOne violated the Agreement, not an additional contract between the parties." *Id.*

As stated previously, under Delaware law, "[t]he implied covenant of good faith and fair dealing involves a 'cautious enterprise,' inferring contractual terms to handle developments or contractual gaps that the asserting party pleads neither party anticipated." *Nemec*, 991 A.2d at 1125. "In order to set forth a claim for the implied covenant of good faith and fair dealing, there needs to be alleged some conduct by the [p]laintiff that was arbitrary or unreasonable which had

the effect of preventing the [d]efendants from receiving the fruits of the contracts." *Cartel Media Grp.*, 2021 WL 3673215, at \*5. Indeed, "[v]iolating the implied covenant of good faith and fair dealing implicitly indicates bad faith conduct." *Cont'l Ins. Co. v. Rutledge & Co., Inc.*, 750 A.2d 1219, 1234 (Del. Ch. 2000). Furthermore, "a breach of the implied covenant claim cannot be based on conduct that the contract expressly addresses." *Khushaim*, 2016 Del. Super. LEXIS 287, at \*9.

Here, PathPartner asserts that ClearOne breached the implied covenant of good faith and fair dealing "by repeatedly asking for services beyond the scope of the Agreement and delaying its payments to PathPartner." ECF No. 157 at 14. As an initial matter, as PathPartner acknowledges, the Agreement expressly addresses the time by which ClearOne was required to pay for PathPartner's services. *Id.* at 4 ("Pursuant to the terms of the Agreement, ClearOne represented that it would conduct timely testing and make timely payments upon acceptance of each phase of the software release."); *see* ECF No. 133-2 ¶ 5.1, Ex. D. Therefore, PathPartner's claim fails to the extent that it is based on ClearOne's allegedly untimely payments to PathPartner.

Moreover, although ClearOne's requests for allegedly out-of-scope services were not expressly contemplated by the Agreement, PathPartner has presented no evidence that such requests were arbitrary or unreasonable, such that they amounted to bad faith conduct. Therefore, the court grants summary judgment in favor of ClearOne on PathPartner's claim that ClearOne breached the implied covenant of good faith and fair dealing. *See Celotex*, 477 U.S. at 322.

## CONCLUSION AND ORDER

The court rules as follows:

1.    The court GRANTS IN PART and DENIES IN PART PathPartner's Motion for Summary Judgment on ClearOne's Claims (ECF No. 138).

2.      The court GRANTS PathPartner's Motion to Exclude the Expert Testimony of Stephen Gray (ECF NO. 138).

3.      The court GRANTS PathPartner's Motion to Exclude the Testimony of Derek Graham and Ketan Merchant (ECF No. 138). However, ClearOne shall have the opportunity to cure its disclosure, if it so chooses.

4.      The court GRANTS IN PART and DENIES IN PART ClearOne's Motion to Determine *Daubert* Issues (ECF No. 130).

5.      The court GRANTS IN PART and DENIES IN PART ClearOne's Motion for Summary Judgment on PathPartner's Counterclaims (ECF No. 133).

DATED March 31, 2022.

BY THE COURT

_____

Jill N. Parrish

United States District Court Judge